25 F.3d 872
 39 ERC 1613, 24 Envtl. L. Rep. 21,117
 NORTHWEST RESOURCE INFORMATION CENTER, INC., et al.,
Plaintiffs-Appellants,
v.
NATIONAL MARINE FISHERIES SERVICE, et al., Defendants,
and
Bonneville Power Administration, Defendant-Appellee.
NORTHWEST RESOURCE INFORMATION CENTER, INC.; Trout
Unlimited; Oregon Natural Resources Council,
Inc.; Idaho Steelhead and Salmon
Unlimited; Sierra Club, Plaintiffs,
v.
NATIONAL MARINE FISHERIES SERVICE; U.S. Army Corps of
Engineers, Defendants,
Bonneville Power Administration, Defendant-Appellee,
v.
PUBLIC UTILITY DISTRICT NO. 2 OF GRANT COUNTY, WASHINGTON, a
municipal corporation; Public Utility District of Douglas
County, Washington, a municipal corporation; Public Utility
District No. 1 of Chelan County, Washington, a municipal
corporation, et al., Defendants-Intervenors, Cross-Claimants,
and
Public Power Council, Defendant-Intervenor, Cross-Claimant-Appellant.
 Nos. 93-35488, 93-35573.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 7, 1994.
Decided June 3, 1994.
 
 Victor M. Sher, Sierra Club Legal Defense Fund, Seattle, WA, for appellants NRIC.
 Gregory Miner, Bogle & Gates, Portland, OR, for appellant Public Power Council.
 Harvard Spigal, Bonneville Power Administration, Portland, OR, for appellee Bonneville Power Admin.
 Appeal from the United States District Court for the Western District of Washington.
 Before: BROWNING, KOZINSKI, and NOONAN, Circuit Judges.
 Opinion by Judge NOONAN.
 NOONAN, Circuit Judge:
 
 
 1
 Northwest Resources Information Center, et al. brought suit against the Bonneville Power Administration, the Army Corps of Engineers, the Bureau of Reclamation, and the National Marine Fisheries Service, claiming violation of the Endangered Species Act (16 U.S.C. Sec. 1531 et seq.) and its implementing regulations (50 C.F.R. Part 402), and the Administrative Procedure Act (5 U.S.C. Sec. 551 et seq.). The district court dismissed the case against the Bonneville Power Administration for lack of jurisdiction. 818 F.Supp. 1399 (W.D.Washington 1993). The plaintiffs and an intervenor-defendant appeal. We affirm the district court.
 
 BACKGROUND
 
 2
 As of November 20, 1991 the National Marine Fisheries Service identified the Snake River sockeye as an endangered species. 56 Fed.Reg. 58,619. As of May 22, 1992 it similarly listed the Snake River spring/summer and fall chinook as threatened species under the Endangered Species Act. 57 Fed.Reg. 14,661. That law treats as a species any "distinct population segment of any species of vertebrate ... which interbreeds when mature." 16 U.S.C. Sec. 1532(16). Under an "interim policy" adopted in 1991 by the National Marine Fisheries Service, a salmon population is treated as a "distinct population segment" when it satisfies two criteria, viz. (1) that it is "reproductively isolated" from "other conspecific population units" and (2) it represents "an important component in the evolutionary legacy of the biological species." Meeting these criteria, a salmon stock is stamped as an "evolutionarily significant unit." If it is "in danger of extinction throughout all or a significant portion of its range," it will be classified as an "endangered species." If it is "likely to become an endangered species throughout all or a significant portion of its range," it will be classified as a "threatened species." 56 Fed.Reg. 29,548-49.
 
 
 3
 The Bonneville Power Administration, an entity of the Department of Energy, markets the hydroelectric power produced at the Columbia river and its tributaries, including the Snake river, by dams and a power generation and transmission system built and administered by the Bureau of Reclamation and the Army Corps of Engineers. It coordinates the operation of the relevant federal agencies under the terms of the Pacific Northwest Electric Power Planning and Conservation Act, 16 U.S.C. Sec. 839, with the obligations imposed by the Act "to assure the Pacific Northwest of an adequate, efficient, economical power supply ... [and] to protect, mitigate and enhance the fish and wildlife ... particularly anadromous fish." 16 U.S.C. Sec. 839(2), (6). The Act further provides for the Northwest Electric Power and Conservation Planning Council whose duties include provision of a program "for improved survival of the anadromous fish at hydroelectric facilities" in the system and provision of "flows of sufficient quality and quantity between such facilities to improve reproduction, migration and survival of such fish as necessary to meet sound biological objectives." 16 U.S.C. Sec. 839b(h)(6)(E). The Bonneville Power Administration must act consistently with the Council's program but in the end has final authority to determine its own decisions. Seattle Master Builders Ass'n v. Pacific Northwest Electric Power and Conservation Planning Council, 786 F.2d 1359, 1362 (9th Cir.1986), cert. denied, 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987); 16 U.S.C. Sec. 839b(h)(10)(A).
 
 
 4
 In August 1992 the Bonneville Power Administration published its 1992 Water Management Record of Decision setting out a program designed to improve the life cycle of anadromous fish stocks. The program included increasing spills and flows to benefit salmon and ways of replacing power that was lost through water storage, flow augmentation and spill benefitting the salmon. Prior to publishing the Record of Decision, the Bonneville Power Administration had prepared a Biological Assessment evaluating the impact of its 1992 operations, concluding that the operations did not jeopardize the listed species; it also had collaborated with the Army Corps of Engineers and the Bureau of Reclamation in preparing the statutorily required "1992 Columbia River Salmon Flow Measures Options Analysis/Environmental Impact Statement."
 
 PROCEEDINGS
 
 5
 The plaintiffs, a broad coalition of organizations devoted to the protection of the environment, sent the defendants in May 1992 a 60 day notice of intent to sue for violations of the Endangered Species Act. On August 4, 1992 they filed their First Amended Complaint seeking a declaratory judgment and injunctive relief. They sought "to compel defendants to engage in adequate and comprehensive consultation" regarding the impact of the operation of the Columbia River Power System on threatened and endangered salmon in the Snake River; to provide sufficient conditions for migrating fish to insure their survival; and to minimize to the maximum extent practicable the incidental take of the listed species by the power system. The plaintiffs alleged that spring and summer chinook in the Snake River, whose population once exceeded 1.5 million adult fish per year, had averaged only 9,674 wild fish per year from 1980 to 1990, and that the Snake River fall chinook, once the most important fall chinook stock in the Columbia River Basin, had declined to 78 wild fish in 1990 and 318 wild adults in 1991. They alleged that the primary cause of the decline of these salmon was the construction and operation of hydroelectric flood control and water storage projects by the power system.
 
 
 6
 Numerous entities that purchase power from the Bonneville Power Administration intervened as defendants. Four defendant-intervenors, all of them Federal Columbia River Power System power users, filed cross-claims against the four federal agencies. As to the Bonneville Power Administration, the cross-claims alleged that the Administration's proposed actions would result in substantially higher power rates and would violate the Endangered Species Act and the Administrative Procedure Act.
 
 
 7
 Alone of the defendants, the Bonneville Power Administration moved to dismiss the action against it for lack of jurisdiction. In a clear and compendious opinion the district court granted the motion. 818 F.Supp. 1399 at 1404. The plaintiffs appeal, as does defendant-intervenor, Public Power Council.
 
 ANALYSIS
 
 8
 The Northwest Power Act provides that any suits to challenge final actions of the Bonneville Power Administration, or the implementation of such final actions, shall be filed in the Ninth Circuit. 16 U.S.C. Sec. 839f(e)(5). We have consistently held that this court has exclusive jurisdiction to review challenges to final actions of the Bonneville Power Administration based upon an administrative record. Pacific Power & Light v. Bonneville Power Administration, 795 F.2d 810, 814 (9th Cir.1986). "The proper inquiry focuses on the agency being attacked and whether the factual basis for that attack is an agency action authorized by the Act." Id. at 816. Only where what petitioner challenged was not a final agency action based upon an administrative record have we found against jurisdiction in this court for claims against the Bonneville Power Administration. For that reason in Public Utility District Number 1 of Clark County v. Johnson, 855 F.2d 647, 650 (9th Cir.1988), we held we lacked jurisdiction to consider petitioner's allegations of breach of contract by the Bonneville Power Administration.
 
 
 9
 The appellants argue that violation of the Endangered Species Act is not authorized by the Act and could be analogized to a tort. But the determinations here made were final actions by the agency carrying out its authorized mission of managing the river system and enhancing the fish stock. They fall within the exclusive jurisdiction of this court.
 
 
 10
 The appellants emphasize that the actions taken by the agency were taken in response to the listing of the salmon and therefore should be classified as actions motivated by the Endangered Species Act. The motivation, however, is irrelevant. Jurisdiction depends upon the kind of action taken. The action was final action by the Bonneville Power Administration based upon an administrative record.
 
 
 11
 The appellants reply that the specific authorization of citizen suits under the Endangered Species Act, 16 U.S.C. Sec. 1540(g), takes precedence over the jurisdictional provision of the Northwest Power Act. To the contrary, the Endangered Species Act is of a general character governing citizen suits throughout the United States. The Northwest Power Act is explicit in its jurisdictional requirements for the administration of the Columbia River Power System.
 
 
 12
 The appellants contend that the result will be an irrational bifurcation of their suit, with some of their claims against some of the defendants remaining in the district court and the rest needing to be brought in this court. It is no doubt true that the jurisdictional provision works against the plaintiffs. But the jurisdictional allocation was made by Congress. It would be even less satisfying if different district courts in the states of the Columbia basin could entertain suits affecting the administration of the river system, instead of the single comprehensive jurisdiction of the Ninth Circuit. Congress has confided to the Bonneville Power Administration the dual task of managing the river system to assure power and to preserve fish. Neither task is subordinate to the other. Charles F. Wilkinson and Daniel Keith Conner, "The Law Of The Pacific Salmon Fishery: Conservation and Allocation Of A Transboundary Common Property Resource," 32 Kan.L.Rev. 17, 53-54 (1983). The agency's final actions fulfilling its statutory mission can be examined only in this court.
 
 
 13
 AFFIRMED.