**ALUMINUM COMPANY OF AMERICA; Columbia Falls Aluminum Company; Elf Atochem North America; Intalco Aluminum Corporation; Kaiser Aluminum & Chemical Corporation; Northwest Aluminum Company; Oregon Metallurgical Corporation; Reynolds Metals Company; Vanalco, Inc., Petitioners,**

**Pacific Northwest Generating Cooperative; Public Power Council, Petitioners–Intervenors,**

**v.**

**BONNEVILLE POWER ADMINISTRATION, Respondent.**

**No. 93–70857.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 1995.

Decided June 1, 1995.

---

James Buchal, Ball, Janik & Novack, Portland, OR, for petitioners.

Ellen J. Durkee, Dept. of Justice, Washington, DC, for respondent.

Before HALL, O'SCANNLAIN, and RYMER, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

In this third of three related cases,[1] we must decide whether a federal agency, the Bonneville Power Administration, acted arbitrarily and capriciously in augmenting river flows as a means of benefitting the salmon.[2]

## I

The factual background is largely set forth in the second of these related cases, *Idaho Department of Fish & Game v. National Marine Fisheries Service*, 56 F.3d 1071 (9th Cir.1995), and we discuss here only the facts that are particular to this petition for review. As we discussed there, the U.S. Army Corps of Engineers (the "Corps"), the Bureau of Reclamation ("BuRec"), and the Bonneville Power Administration ("BPA") consulted with the National Marine Fisheries Service ("NMFS") pursuant to the Endangered Species Act on the 1993 Operations Plan. Initially, in preparing its Biological Opinion, NMFS drafted a jeopardy opinion which included measures for augmented river flow as part of a reasonable and prudent alternative that would not jeopardize the salmon. NMFS did not ultimately issue the jeopardy opinion, however, because the federal agencies agreed by letter to modify their 1993 Operations Plan to incorporate NMFS's recommended flow augmentation measures. On May 26, 1993, NMFS issued a final Biological Opinion ("1993 BO"), finding that the revised 1993 Operations Plan was not likely to jeopardize the continued existence of the salmon.

On July 26, 1993, BPA published its Record of Decision on Water Management Actions in the Columbia River System to be Taken by the Bonneville Power Administration in 1993 for the Benefit of Snake River Salmon ("1993 ROD"). The 1993 ROD identified various actions that BPA and the other action agencies planned to take in 1993 to benefit listed Snake River Salmon. These actions included the flow augmentation measures, spill-related measures and nonflow measures, such as predator control programs, a law enforcement program, fish passage and transportation improvements, and monitoring and research. The 1993 ROD

1. By separate published opinions filed today, we decide the related case of *Idaho Department of Fish & Game v. National Marine Fisheries Service*, 56 F.3d 1071 (9th Cir.1995) and the contemporaneous appeal in *Northwest Resource Information Center v. National Marine Fisheries Service*, 56 F.3d 1060 (9th Cir.1995). Both of these cases are direct appeals from the United States District Court for the District of Oregon. By contrast, the instant case is a petition for review of a decision made by the Bonneville Power Administration and filed directly in this court.

2. Petitioners' motions to supplement the record are denied.

was based on a number of sources, including NMFS' 1993 BO.

The flow augmentation measures, which are the primary subject of this appeal, were designed to assist juvenile salmon in their downstream migrations. Some scientific evidence suggests that increasing the flow of water reduces the time that the juvenile salmon will take to travel the distances between dams on their voyage downstream. It is thought that the faster the salmon travel, the less likely they will be killed by predators or the physiological stresses caused by the hydropower operations. Although increased flows still permit electric power generation, in order to benefit the juvenile salmon the flows must be increased in the spring and summer when demand for power is at its lowest. Thus, increasing flows to benefit salmon usually results in shifting power generation from the higher demand seasons to the lower demand seasons, thereby reducing the amount of power available to BPA for marketing and reducing BPA's revenues. Although the funds to cover the loss in revenues will initially be paid from BPA's financial reserves, BPA expects ultimately to recover its costs through rate increases.

BPA, in its 1993 ROD acceded to NMFS' recommendations regarding augmented flows, as it had promised to do to avoid a jeopardy opinion. The 1993 ROD stated that although the region still lacked information about the relationship between flow and salmon survival, the evidence available justified the use of flow augmentation. It is this conclusion that the Aluminum Company of America and other direct service industries (collectively the "DSIs") challenge. At the crux of the DSIs' various legal claims is their basic argument that scientific studies have failed to establish a sufficient link between increased flows and increased salmon survival so as to justify the costs that result from

flow augmentation. Original jurisdiction over claims arising from BPA's administrative decisionmaking lies in the Ninth Circuit. *N.W. Resource Info. Ctr. v. National Marine Fisheries Serv.*, 25 F.3d 872, 874 (9th Cir. 1994). Accordingly, on October 22, 1993, the DSIs brought suit against BPA in this court.[3] The DSIs challenge BPA's decision in the 1993 ROD to augment river flows as violative of the ESA, the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, and the Pacific Northwest Electric Power Planning and Conservation Act, 16 U.S.C. § 837 *et seq.*[4]

**II**

Before swimming into the merits of this controversy, we must determine if we have jurisdiction over it. BPA contends that the DSIs' challenge to the 1993 ROD is moot because the flow augmentation measures that the DSIs challenge have already been taken and the 1993 ROD has expired.

We are guided in this determination by *Idaho Department of Fish & Game, supra.* There, the district court held that NMFS' 1993 BO was arbitrary and capricious. The district court remanded the BO to NMFS and ordered NMFS to reinitiate consultation with the federal agencies. The federal defendants requested permission to reinitiate consultation on the 1994–1998 BO which was then in progress, and the district court agreed. Pursuant to these consultations, on March 2, 1995, NMFS issued its Biological Opinion: Reinitiation of Consultation on 1994–1998 Operation of the Federal Columbia River Power System and Juvenile Transportation Program in 1995 and Future Years ("1994–1998 BO"). Eight days later, BPA issued its Endangered Species Act Record of Decision regarding Biological Opinions by the National Marine Fisheries Service and

3. The Pacific Northwest Generating Cooperative ("PNGC") and the Public Power Council ("PPC") also filed a petition for review of BPA's ROD in this court. PNGC and PPC's case was consolidated with the DSIs' case, and pursuant to Circuit Rule 15–3.2(c), PNGC and PPC were deemed to have intervened in the DSIs' case.

4. The DSIs' suit against BPA is related to *Idaho Department of Fish & Game, supra.* In that case,

on September 10, 1993, the Idaho Department of Fish & Game brought suit against NMFS, the Corps and BuRec, claiming that NMFS' 1993 BO was arbitrary and capricious. The DSIs, PNGC, and PPC intervened as defendants and appealed the district court's decision that the 1993 BO was arbitrary and capricious. BPA's 1993 ROD, at issue here, relied on NMFS' 1993 BO.

**1078**

U.S. Fish and Wildlife Service on Operation of the Federal Columbia River Power System in 1995 and Future Years ("1994–1998 ROD"). In that ROD, BPA sets forth its "decision to participate with the [Corps] and [BuRec] to operate ... [FCRPS] for 1995 and future years consistent with" NMFS' 1994–1998 BO.

On appeal in *Idaho Department of Fish & Game,* we concluded that, in light of NMFS' newly-issued 1994–1998 BO, challenges to NMFS' 1993 BO were moot. Slip op. at 6045. We noted that although the mootness doctrine ordinarily bars a challenge to an action that has already taken place, the challenge is not barred if the challenged action is capable of repetition yet is likely to evade review. *Id.* at 1074. However, we held that the challenges to the 1993 BO did not fall under this exception because they did not evade review. We stated: "[T]he 1993 BO was not followed by a BO of similarly short duration; it was followed by the 1994–98 BO. The life-span of the 1994–98 BO, even considering the year that has already passed, is more than enough time for litigants to obtain judicial review." *Id.* at 1075.

The same analysis is applicable here. The 1993 flow augmentation measures that the DSIs challenge have already occurred. BPA's 1993 ROD has expired, and BPA's current actions are being taken pursuant to the 1994–1998 ROD. If the DSIs object to the actions contemplated by the 1994–1998 ROD, they will have ample time to obtain judicial review. Moreover, review of the 1993 ROD would be especially inappropriate because that document was based on NMFS' 1993 BO. The 1993 BO has been superseded by the 1994–1998 BO, the document upon which BPA's 1994–1998 ROD is based. Thus, not only has the 1993 ROD expired, its factual underpinning, NMFS' 1993 BO, has also been superseded. We therefore hold that the DSIs' challenges to the 1993 ROD, like the challenges to the 1993 BO addressed in *Idaho Department of Fish & Game,* are moot.

PETITION DISMISSED.