56 F.3d 1071
 40 ERC 2005, Util. L. Rep. P 14,049
 IDAHO DEPARTMENT OF FISH & GAME, Plaintiff-Appellee,
State of Oregon, Intervenor-Appellee,
Northwest Resource Information Center, Inc., Intervenor-Appellee,
v.
NATIONAL MARINE FISHERIES SERVICE, Defendant-Cross-Defendant-Appellee,
Direct Service Industrial Customers (Aluminum Co. of
America, Atochem North America, Columbia Falls Aluminum
Company, Georgia-Pacific Corp., Kaiser Aluminum & Chemical
Corp., Intalco Aluminum Corp., et al.), Defendant-Intervenor-Appellant,
v.
Randall W. HARDY, in his official capacity as Administrator
of the Bonneville Power Administration,
Third-Party-Defendant-Appellee.
IDAHO DEPARTMENT OF FISH & GAME, Plaintiff-Appellee,
and
State of Oregon, Intervenor-Appellee,
v.
NATIONAL MARINE FISHERIES SERVICE, Defendant-Cross-Defendant-Appellee,
v.
PACIFIC NORTHWEST GENERATING COOPERATIVE,
Defendant-Intervenor-Appellant,
v.
Randall W. HARDY, in his official capacity as Administrator
of the Bonneville Power Administration,
Third-Party-Defendant-Appellee.
 Nos. 94-35524, 94-35568.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 6, 1995.
Decided June 1, 1995.
 
 James L. Buchal, Ball, Janik & Novack, R. Daniel Lindahl, Bullivant, Houser, Bailey, Pendergrass & Hoffman, P.C., Portland, OR, for defendants-appellants.
 J. Carol Williams, Dept. of Justice, Environment and Natural Resources Division, Washington, DC, for plaintiffs-appellees.
 Larry Echohawk, Atty. Gen., Clive J. Strong, William S. Whelan, argued, Matthew J. McKeown, Deputy Attys. Gen., Boise, ID, for plaintiff-appellee Idaho Dept. of Fish and Game.
 Theodore R. Kulongoski, Atty. Gen. of Oregon, Virginia L. Linder, Sol. Gen., Stephanie L. Striffler, Asst. Atty. Gen., Salem, OR, for plaintiff-intervenor-appellee.
 Appeals from the United States District Court for the District of Oregon.
 Before: HALL, O'SCANNLAIN, and RYMER, Circuit Judges.
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 In this second of three related cases,[1] we must decide whether the National Marine Fisheries Service complied with its duties under the Endangered Species Act, specifically with respect to its approval of the 1993 Operations Plan for the hydropower system on the Columbia and Snake Rivers.
 
 
 2
 * The U.S. Army Corps of Engineers (the "Corps"), the U.S. Bureau of Reclamation ("BuRec"), and the Bonneville Power Administration ("BPA") jointly manage the dams, reservoirs, and other facilities in the Columbia and Snake River Basin that constitute the Federal Columbia River Power System (the "FCRPS"). The Corps and BuRec operate the dams while BPA markets the hydroelectric power generated by the FCRPS.
 
 
 3
 As we have discussed elsewhere, "it is generally accepted that the Basin's hydropower system is a major factor in the decline of some salmon and steelhead runs to a point of near extinction." N.W. Resource Info. Ctr. v. N.W. Power Planning Council, 35 F.3d 1371, 1376 (9th Cir.1994) (quotation omitted). In 1980, in the Pacific Northwest Electric Power Planning and Conservation Act, 16 U.S.C. Sec. 837 et seq., Congress reacted to the rapidly diminishing salmon populations by directing BPA and the other federal agencies to take steps to protect the salmon harmed by the federal hydropower system. Despite the agencies' efforts, populations of wild salmon continued to decline. As a result, the National Marine Fisheries Service ("NMFS") listed the Snake River sockeye salmon as an endangered species in 1991 and the Snake River spring/summer and fall chinook salmon as threatened species in 1992.
 
 
 4
 The Corps, BuRec, and BPA jointly develop an operational plan for the FCRPS, which must take into account its many uses--electric power production, flood control, navigation, irrigation, and recreation. In February 1993, the agencies issued the 1993 Operations of the Federal Columbia River Power System ("1993 Operations Plan"), which covered operations from April 1993 through January 1994. In addition to setting forth the general workings of the hydropower system, the 1993 Operations Plan also contained several actions that were specifically designed to benefit the salmon. These included flow-related actions, spill-related actions, a transportation program, a predator removal program, and stricter law enforcement.
 
 
 5
 * Like the exhausting migration of the salmon, agency actions that affect the salmon must make their way through a river of paper. The Endangered Species Act ("ESA"), 16 U.S.C. Sec. 1531 et seq., contains several substantive and procedural provisions designed to protect endangered species. These provisions are triggered when a species is listed as endangered or threatened. 16 U.S.C. Sec. 1533. Under section 7(a)(2) of the ESA, federal agencies must "insure that any action authorized, funded, or carried out by such agency ... is not likely to jeopardize the continued existence of any endangered species or threatened species[.]" 16 U.S.C. Sec. 1536(a)(2).
 
 
 6
 Before undertaking any action that could affect a listed species, an agency must consult with the Secretary (or in this case NMFS)[2] either formally or informally. 16 U.S.C. Sec. 1536(a)(4); 50 C.F.R. Sec. 402.14(a). In formal consultation, the agency must prepare a Biological Assessment ("BA") evaluating the potential effects its action will have on the listed species. 50 C.F.R. Sec. 402.12. NMFS must then prepare a Biological Opinion ("BO") evaluating the effects of the action. If NMFS concludes that the agency action will jeopardize a listed species, it issues a "jeopardy opinion." 16 U.S.C. Sec. 1536(b)(3)(A); 50 C.F.R. Sec. 402.14(h)(3). If the BO makes such a jeopardy finding, NMFS may also suggest "reasonable and prudent alternatives" to the proposed action that would avoid creating jeopardy. Id. If NMFS determines that the agency action is not likely to jeopardize a listed species, it issues a "no jeopardy opinion." 16 U.S.C. Sec. 1536(b)(4)(B)(ii); 50 C.F.R. Sec. 402.02. If the BO makes such a no jeopardy finding, NMFS may also suggest "reasonable and prudent measures" that would reduce the number of species that are incidentally taken (i.e., harmed or killed) by the action. Id.
 
 
 7
 Pursuant to the ESA, the Corps, BuRec, and BPA consulted with NMFS on the 1993 Operations Plan in order to insure that it would not jeopardize the salmon. The federal agencies also submitted a BA to NMFS that analyzed the effects of the actions set forth in the 1993 Operations Plan on the salmon. Initially, in preparing its BO, NMFS drafted a jeopardy opinion. This draft jeopardy opinion included augmented flow measures as part of a reasonable and prudent alternative that would not jeopardize the salmon. NMFS did not ultimately issue the jeopardy opinion, however, because of improved forecasts for natural spring and summer flow, and because the federal agencies agreed by letter to modify their 1993 Operations Plan to incorporate NMFS's recommended flow augmentation measures.
 
 
 8
 On May 26, 1993, NMFS issued a final BO finding that the revised 1993 Operations Plan was not likely to jeopardize the continued existence of the salmon. In the BO, NMFS applied a two-step analysis to determine if the proposed actions would jeopardize the salmon within the meaning of section 7 of the ESA. NMFS analyzed: (1) whether the 1993 Operations Plan would reduce salmon mortality relative to an environmental baseline period of 1986-1990; and (2) whether the 1993 Operations Plan along with all other proposed actions affecting the salmon (i.e. harvest limits, hatchery releases, and habitat modifications) were reasonably likely to reduce salmon mortality over the long term such that populations would stabilize.
 
 
 9
 The federal agencies, although they took issue with NMFS' two-step analysis, issued Records of Decision ("RODs") implementing the 1993 Operations Plan in June and July 1993.[3]
 
 B
 
 10
 On September 10, 1993, the Idaho Department of Fish & Game ("Idaho") brought suit against NMFS, the Corps, and BuRec claiming that NMFS' BO violated the ESA. Idaho challenged NMFS' decision to issue a no jeopardy opinion, claiming that NMFS had failed to insure that the 1993 Operations Plan would not jeopardize the salmon. The State of Oregon intervened as a plaintiff.[4] The Aluminum Company of America and other direct service industries (collectively the "DSIs"), the Pacific Northwest Generating Cooperative ("PNGC"), and the Public Power Council ("PPC") intervened as defendants.[5] The DSIs also asserted cross-claims against NMFS, the Corps, and BuRec and third-party claims against BPA, which was not a party to the original suit.[6] The DSIs and the other intervenors approved of NMFS' decision to issue a no jeopardy opinion but took issue with the two-step analysis it employed in reaching that decision.
 
 
 11
 On March 28, 1994, on cross-motions for summary judgment, the district court granted summary judgment for Idaho. Idaho Dep't of Fish & Game v. National Marine Fisheries Serv., 850 F.Supp. 886 (D.Or.1994). The court held that NMFS' BO was arbitrary and capricious; in particular, the court found that NMFS had failed to give an adequate explanation for several of the key assumptions that went into its jeopardy analysis. The court therefore remanded the BO to NMFS and ordered it to reinitiate consultation with the federal agencies.
 
 
 12
 At the time the court rendered its decision, NMFS' 1993 BO was due to expire in twelve days. On April 8, the federal defendants advised the district court that the errors it had identified in the 1993 BO had been carried over into the BO that had been prepared for the 1994-1998 Operations Plan; they therefore requested that they be allowed to reinitiate consultations on the current BO. On April 26, in its Judgment, the court held that the parties could satisfy the order to reinitiate consultation by reinitiating consultation on the 1994-1998 Operations Plan. The parties subsequently did so.[7]
 
 
 13
 Two of the intervenors, the DSIs and PNGC, appeal. The federal defendants, however, did not appeal.
 
 II
 
 14
 The DSIs and PNGC claim, among other things, that NMFS' two-step jeopardy analysis has no foundation in the ESA and creates an excessively strict standard for determining whether the operations of the hydropower system jeopardize the salmon. Before we may delve into the merits of the DSIs' and PNGC's numerous arguments, however, we must determine whether the DSIs' and PNGC's claims are now moot.
 
 
 15
 NMFS' 1993 BO evaluated the 1993 Operations Plan, which covered operations of the FCRPS from April 1993 to January 1994. The 1993 BO has thus expired. On March 2, 1995, NMFS issued the Biological Opinion: Reinitiation of Consultation on 1994-1998 Operation of the Federal Columbia River Power System and Juvenile Transportation Program in 1995 and Future Years ("1994-1998 BO").[8] The 1994-1998 BO superseded the prior 1993 BO and is the document on which the Corps, BuRec, and BPA based their RODs governing the operation of the FCRPS. These RODs, covering 1995 and future years, were issued on March 10, 1995. In short, the challenged actions are now water over the spillway, as it were.
 
 
 16
 Although the mootness doctrine ordinarily bars a challenge to an action that has already taken place, a challenge is not barred if the action at issue is capable of repetition, yet likely to evade review. See S. Pacific Terminal Co. v. ICC, 219 U.S. 498, 514-15, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). This court has held that agency actions fall within the capable of repetition exception to the mootness doctrine if "(1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again." Greenpeace Action v. Franklin, 14 F.3d 1324, 1329 (9th Cir.1992).
 
 
 17
 In Greenpeace Action, the plaintiffs challenged the Pacific Fishery Management Council's total allowable catch ("TAC") regulation for pollock for the 1991 fishing season. The agency argued that the plaintiffs' claims were moot because the 1991 fishing season had ended, the 1991 TAC had expired, and a new TAC was in effect. The court, however, concluded that the agency's actions fell within the capable of repetition exception, basing its conclusion on two factors. First, the challenged regulation was in effect for less than one year, making it difficult to obtain effective judicial review. Second, the major issue in the case was likely to recur because the agency had relied upon the same BO in formulating the 1992 TAC as it had for the 1991 TAC.
 
 
 18
 Here, as in Greenpeace Action, the 1993 BO was in effect for less than one year (from April 1993 to January 1994, the period covered by the 1993 Operations Plan). However, unlike Greenpeace Action, the 1993 BO was not followed by a BO of similarly short duration; it was followed by the 1994-1998 BO. The life-span of the 1994-1998 BO, even considering the year that has already passed, is more than enough time for litigants to obtain judicial review.[9] In sum, the DSIs' and PNGC's claims do not evade review.[10]
 
 
 19
 In addition, in Greenpeace Action, the court held that the major issue in the plaintiffs' claim was likely to recur in part because the agency relied on the same BO in subsequent years. Here, by contrast, the 1993 BO has been superseded, and the federal agencies will rely on NMFS' 1994-1998 BO for the near future.
 
 III
 
 20
 For the above reasons, we hold that the DSIs' and PNGC's claims are moot. We therefore remand to the district court with instructions to vacate the judgment below and to dismiss the action as moot.
 
 
 21
 REMANDED with instructions to VACATE the judgment and to DISMISS the action as moot. Each side shall bear its own costs.
 
 
 
 [1]
 By separate published opinions filed today, we decide the related case of Aluminum Co. of America v. Bonneville Power Administration, 56 F.3d 1075 (9th Cir.1995) and the contemporaneous appeal in Northwest Resource Information Center v. National Marine Fisheries Service, 56 F.3d 1060 (9th Cir.1995)
 
 
 [2]
 Responsibility for listed species is divided between the Secretary of the Interior and the Secretary of Commerce. 16 U.S.C. Sec. 1532(15). The Secretary of the Interior has delegated his responsibilities to the Fish & Wildlife Service. The Secretary of Commerce has delegated his responsibilities to NMFS. NMFS has the primary responsibility for the species in this case. 50 C.F.R. Secs. 222.23(a), 227.4(g), (h)
 
 
 [3]
 The ROD issued by BPA on July 26, 1993 is the subject of our decision in Aluminum Co. of America v. Bonneville Power Administration, 56 F.3d 1075 (9th Cir.1995)
 
 
 [4]
 In addition, several Indian Tribes with fishing rights on the Columbia River and the State of Alaska participated as amici in support of the plaintiffs
 
 
 [5]
 The DSIs are industries directly served with electricity generated by the FCRPS and sold to them by BPA. PNGC is a power cooperative representing 29 rural electric cooperatives. PPC represents 114 consumer-owned electric utilities. PNGC's and PPC's members receive their wholesale power from BPA
 
 
 [6]
 Because original jurisdiction over claims arising from BPA's administrative decisionmaking lies in the Ninth Circuit, N.W. Resource Info. Ctr. v. Nat'l Marine Fisheries Serv., 25 F.3d 872, 874 (9th Cir.1994), Idaho could not have named BPA as a defendant in its suit
 
 
 [7]
 The DSIs have made several claims regarding the consultation process which took place subsequent to the district court's decision. PNGC, however, has conceded that these claims are not properly before this panel. PNGC is correct. If the DSIs object to the consultation procedures that were used regarding the 1994-1998 Operations Plan, they can bring suit under the ESA or the Federal Advisory Committee Act. Indeed, the DSIs did so, and their claims were rejected by the district court. Aluminum Co. of Am. v. National Marine Fisheries Serv., Civ. No. 94-698-MA (D.Or. Aug. 10, 1994). In addition, as we discuss below, the DSIs may challenge errors in the substance of the BO for the 1994-1998 Operations Plan once a final agency decision has been reached
 
 
 [8]
 The 1994-1998 BO, unlike the 1993 BO, was a jeopardy opinion. NMFS proposed a reasonable and prudent alternative that included a number of actions which could be taken to avoid jeopardizing the listed salmon
 
 
 [9]
 Indeed, the district court has already resolved one such challenge. American Rivers v. National Marine Fisheries Serv., Civ. No. 94-940-MA, 1995 WL 464544 (D.Or. Apr. 14, 1995)
 
 
 [10]
 Likewise, because the ROD issued by BPA covers 1995 and future years, we determine that challenges to it will not evade review either; consequently, we hold that the DSIs claims are moot in a related case also decided today. Aluminum Co. of Am. v. Bonneville Power Admin., 56 F.3d 1075 (9th Cir.1995)