**NORTHWEST RESOURCE INFORMATION CENTER, et al., Plaintiffs,**

v.

**The NATIONAL MARINE FISHERIES SERVICE, et al., Defendants.**

No. C92–1156(D)M.

United States District Court, W.D. Washington.

March 3, 1993.

Todd D. True, Victor M. Sher, Adam J. Berger, Sierra Club Legal Defense Fund, Seattle, WA, for Northwest Resource Information Center, Inc., plaintiffs.

Brian C. Kipnis, Christopher Lee Pickrell, U.S. Atty.'s Office, Seattle, WA, Charles R. Shockey, U.S. Dept. of Justice, Land and Natural Resources Div., Washington, DC, for defendants.

Jeffrey W. Ring, James L. Buchal, Gary F. Firestone, Heller, Ehrman, White & McAuliffe, Portland, OR, for Direct Service Industries.

Ray A. Foianini, Foianini Law Offices, Ephrata, WA, for Public Utility Dist. No. 2 of Grant County.

Stanley A. Bastian, Garfield R. Jeffers, David E. Sonn, Jeffers, Danielson, Sonn & Aylward, Wenatchee, WA, for Public Utility Dist. No. 1 of Douglas County.

Joel Cartwright Merkel, Hiscock & Barclay, Seattle, WA, for Port of Clarkston, Port of Lewiston, Columbia/Snake River Irrigators Ass'n, Eastern Oregon Irrigators Ass'n, Northwest Irrigation Utilities.

J. Matthew Geyman, Heller, Ehrman, White & McAuliffe, Seattle, WA, Jeffrey W. Ring, James L. Buchal, Gary F. Firestone, Heller, Ehrman, White & McAuliffe, Portland, OR, for Aluminum Co. of America, Columbia Aluminum Corp., Atochem North America, Columbia Falls Aluminum Co., Kaiser Aluminum & Chemical Corp., Intalco Aluminum Corp., Northwest Aluminum Co., Oregon Metallurgical Corp., Reynolds Metals Co., Vanalco Inc.

Roger A. Braden, Davis, Arneil, Dorsey, Kight & Parlette, Wenatchee, WA, for Public Utility Dist. No. 1 of Chelan County.

Cynthia Lombardi, Gregory J. Miner, Bogle & Gates, Portland, OR, for Public Power Council.

## ORDER GRANTING BPA's MOTION

McGOVERN, District Judge.

### INTRODUCTION

This cause of action against four federal agencies—National Marine Fisheries Service (NMFS), U.S. Army Corps of Engineers (COE), U.S. Bureau of Reclamation (BOR), and Bonneville Power Administration (BPA)—alleges violations of the Endangered Species Act (ESA) and the Administrative Procedure Act (APA).

Federal Defendants assert that this court lacks subject matter jurisdiction over Plaintiffs' claims against the BPA because Section 9(e)(5) of the Pacific Northwest Electric Power Planning and Conservation Act (Northwest Power Act, or NWPA) vests the Ninth Circuit with exclusive jurisdiction to review any challenge to a final action of the BPA administrator taken under the NWPA, regardless of Plaintiffs' legal theory. Plaintiffs' claims against NMFS, BOR, and COE would remain in the District Court, subject to motions raising affirmative or jurisdictional defenses.

Petitions for review of BPA's "final action" as embodied in the Record on Decision (ROD, discussed below) have already been filed with the Ninth Circuit pursuant to the Northwest Power Act's exclusive jurisdiction provision. These petitions have been filed by Plaintiffs and Defendant–Intervenors in this case, and by the Plaintiff in the District of Oregon litigation.

### STATUTORY PROVISION AT ISSUE

Section 9(e)(5) of the Northwest Power Act provides:

Suits to challenge the constitutionality of this chapter, or any action thereunder, final actions and decisions taken pursuant to this chapter by the Administrator or the Council, or the implementation of such final actions, whether brought pursuant to this chapter, the Bonneville Project Act [16 U.S.C. §§ 832 et seq.], the Act of August 31, 1964 (16 U.S.C. 837–837h) [16 USCS §§ 837 et seq.], or the Federal Columbia River Transmission System Act (16 U.S.C. 838 and following), shall be filed in the

United States Court of Appeals for the region. Such suits shall be filed within ninety days of the time such action or decision is deemed final ... Suits challenging any other actions under this chapter shall be filed in the appropriate court. Federal Defendants cite all eight lawsuits that challenge final action of the Administrator that have been filed in federal district courts and which have been dismissed for lack of subject matter jurisdiction.

## SAMPLER OF NINTH CIRCUIT CASE LAW ON BPA JURISDICTION

■ The Ninth Circuit has explained that exclusive jurisdiction over claims against BPA turn on the action challenged and not on the lawsuit's legal theory. In *Pacific Power and Light Co. v. BPA,* 795 F.2d 810, 816 (9th Cir.1986), the Ninth Circuit stated:

The plaintiffs err in arguing that the legal theory upon which they base their claims is dispositive of the jurisdiction question. In § 839f(e)(5), Congress has decided that jurisdiction under the Act should be a function of the agency whose actions are being challenged rather than a function of the cause of action which petitioner asserts. This jurisdictional scheme is consistent with myriad statutes which confer original jurisdiction on courts of appeals based upon the agency being attacked. * * *

For jurisdictional purposes, therefore, it matters not whether the utilities suit is grounded in contract, administrative law or some other legal theory. Instead, jurisdiction arises because the actions of a particular agency are being challenged and because of the nature of the agency action at issue.

Similarly, in *Central Montana Elec. Power Coop. Inc. v. BPA,* 840 F.2d 1472, 1475–76 (9th Cir.1988), brought under the Flood Control Act of 1950, Plaintiffs argued the District Court had jurisdiction because the lawsuit was not brought under the Northwest Power Act. The Circuit disagreed stating it had consistently interpreted Section 9(e)(5) "with a broad view of this Court's jurisdiction and a narrow definition of district court jurisdiction," *id.* and that "our focus is on the agency being attacked and whether the factual basis

for the attack is an agency action authorized by the Act." *Id.*

## BPA FINAL ACTION

While Plaintiffs broadly allege that Defendants violated the ESA rather than challenge particular agency actions, Plaintiffs do challenge action of the BPA Administrator concerning the 1992 operation and management of the Federal Columbia River Power System (FCRPS), embodied in BPA's 1992 Water Management Record of Decision (ROD), and implemented in coordination with the other Federal Defendants. 57 Fed.Reg. 35,-796–35,797 (Aug. 11, 1992). Two other documents underlying BPA action in addition to the ROD are the 1992 Columbia River Salmon Flow Measures—Options Analysis/Environmental Impact Statement (EIS), and the BPA's "Biological Assessment: 1992 Operations of the FCRPS" (BA).

The ROD synthesizes the Administrator's conclusions from the EIS and BA and explains BPA's rationale for making comprehensive power marketing and water allocation decisions for 1992. Federal Defendants argue that the ROD is important because it is the final action of the BPA Administrator that forms the basis of Plaintiffs' claim against BPA and the ROD demonstrates that BPA's action is authorized by and taken pursuant to the NWPA and related legislation.

## THE STATUTORY AMBIGUITY

The Ninth Circuit has addressed the statutory ambiguity created by the provision for certain agency actions to be reviewed in the Court of Appeals and other agency actions to be reviewed "in the appropriate court." The Circuit has noted that the Pacific Northwest Electric Power Planning and Conservation Act (the Regional Act) responded to the urgent need to allocate power resources in the Pacific Northwest, that the emphasis of the entire structure of the legislation is on prompt action, and that the Act requires expeditious judicial review to further this pressing concern. *Forelaws on Board v. Johnson,* 709 F.2d 1310, 1312 (9th Cir.1983). The Circuit also was aware that under more liberal views of District Court jurisdiction, essentially identical agency action would be

subject to initial judicial review in different levels of federal courts. *Id.* at 1312–13. Direct review by the Court of Appeals "prevents district courts in different states of the region from rendering potentially conflicting interpretations of the act. Original jurisdiction in [the Court of Appeals] permits uniform interpretation of the Act and promotes expedited review." *Pacific Power and Light v. Bonneville Power Admin.*, 795 F.2d 810, 815 (9th Cir.1986). Thus, the rule developed that jurisdiction under the Act focuses on the agency action being challenged and whether the factual basis for the challenge is an agency action authorized by the Act. *Public Utility District No. 1 v. Johnson*, 855 F.2d 647, 649 (9th Cir.1988).

## ARGUMENTS AGAINST NINTH CIRCUIT JURISDICTION

Plaintiffs raise three primary arguments against the Federal Defendants' motion to dismiss or transfer claims against the BPA to the Ninth Circuit:

    1. Their claims arise solely under the Endangered Species Act not the NWPA and provide no basis for Ninth Circuit jurisdiction,

    2. Section 11(g) of the ESA, which vests jurisdiction in the District Court, takes precedence over Ninth Circuit jurisdiction under the NWPA, and

    3. Ninth Circuit jurisdiction over BPA would result in irrational, bifurcated judicial review of the ESA claims against the four federal agency defendants.

Argument 1. BPA's mission under the NWPA is not only to manage Columbia River power, but also to protect fish and wildlife:

The Administrator and other Federal agencies responsible for managing, operating, or regulating Federal or non-Federal hydroelectric facilities on the Columbia River and its tributaries shall—

(i) exercise such responsibilities consistent with the purposes of the Act and other applicable laws to adequately protect, mitigate, and enhance fish and wildlife, including related spawning grounds and habitat affected by such projects or facilities in a manner that provides equitable treatment for such fish and wildlife with the other purposes for which such system and facilities are managed and operated;

(ii) exercise such responsibilities, taking into account at each relevant stage of decisionmaking processes to the fullest extent practicable, the program adopted by the Council under this subsection ...

16 U.S.C. § 839b(h)(11)(A)(i) & (ii). The NWPA also requires the Northwest Power Planning Council to develop a fish and wildlife program including measures that it determines will—

in the case of anadromous fish—provide for improved survival of such fish at hydroelectric facilities located on the Columbia River system; and provide flows of sufficient quality and quantity between such facilities to improve production, migration, and survival of such fish as necessary to meet sound biological objectives.

16 U.S.C. § 839b(h)(6)(E)(i) & (ii).

BPA's actions set forth in the ROD are comprised both of power marketing determinations and determinations regarding the protection, mitigation, and enhancement of anadromous fish. 57 Fed.Reg. at 35797.

■ Contrary to what Plaintiffs argue, Congress did not state that only ratemaking, contract, power marketing, and transmission decisions are reviewable in the Ninth Circuit. The plain meaning of the statute makes clear that all final actions and decisions of the BPA Administrator are reviewable in the Ninth Circuit. Moreover, to clarify that the final actions identified in subsection 9(e)(1) of the NWPA are not the only final actions subject to Ninth Circuit review, Section 9(e)(3) provides that "[n]othing in this section shall be construed to preclude judicial review of other final actions and decisions by the Council or the Administrator." 16 U.S.C. § 839f(e)(3).

■ Plaintiffs argue that the actions being challenged were motivated by a need to comply with the ESA rather than the NWPA, but the Ninth Circuit has stated that the nature of the action being challenged, not its motivation, is the basis for determining whether the Ninth Circuit has jurisdiction. ESA was not the sole concern of the BPA in reaching its determinations. The ROD demonstrates there were other factors: request of the Salmon Summit, recommendation of state and regional agencies in the Columbia

River Basin, the Power Planning Council's Phase II Fish & Wildlife Program (FWP) Amendments, and the recommendations presented in the Biological Opinion developed by NMFS. 57 Fed.Reg. at 35804. The BPA's continuing obligation to sell and dispose of electric power produced at the dams to assure the Pacific Northwest an "adequate, efficient, economical and reliable power supply" and its obligation to protect, mitigate and enhance fish and wildlife in a manner consistent with the Council's FWP, power plan, and the statutory purposes of the NWPA were all factors that contributed to BPA's 1992 FCRPS determinations.

Defendants agree that not all claims against BPA fall within the Circuit Court's original jurisdiction. The Ninth Circuit explained in *Public Utility District No. 1 of Clark County v. Johnson*, 855 F.2d 647, 649 (9th Cir.1988) that breach of contract claims for monetary damages must be brought in the Court of Claims, in accordance with the Tucker Act, 28 U.S.C. § 1346(a)(1), and that tort actions must be brought in federal district court, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b). The Court reasoned that these actions did not involve review of final actions taken under BPA's primary statutory authorities. *See* 855 F.2d at 650.

Finally, Plaintiffs do challenge BPA's power marketing determinations. Among other things, they ask this Court to set aside BPA submissions under the Pacific Northwest Coordination Agreement (PNCA) and to enjoin BPA from entering into any power sales or water agreements. They claim the latter is "a mere remedial incident of Plaintiffs' ESA claims in this case." Pl.Resp. at 30. These activities are central to BPA's ability to implement its power marketing functions and statutory responsibilities.

Plaintiffs also argue that requests for prospective relief cannot constitute challenges to "final actions" previously taken by BPA. This argument fails because whether the *relief* sought is prospective or retroactive, the *claim* and basis for the relief is a final action of the Administrator that has already occurred. Furthermore, nonfinal agency action would not be reviewable in either the Circuit or District Court. Finally, the relief sought would prevent BPA from satisfying its statutory obligations, and this is a matter for Ninth Circuit review.

Argument 2. The cases cited by Plaintiffs for the argument that questions of BPA's compliance with the ESA belong in District Court are not persuasive. One case summarily states in a footnote that jurisdiction over the FCC on a Sunshine Act claim was properly in the District Court; it sheds little light on the facts at bar. The other case is likewise of little help. It involves a lawsuit against the EPA to prohibit the use of pesticides containing strychnine, in part, because of its impact on protected species under the ESA. The issue there was whether plaintiffs' remedy under the Federal Insecticide, Fungicide and Rodenticide Act was exclusive of their remedy under the ESA.

Argument 3. Plaintiffs contend that they can obtain full review only by naming the action agency (BPA) and the consulting agency (NMFS) and the other action agencies (COE and BOR). This argument fails, however, because BPA's action must stand or fall on the reasonableness of its decisions based upon its administrative record; the reasonableness of the other agencies final actions also must be reviewed against their own records. Plaintiffs and the Public Power Council can maintain their lawsuit against NMFS, COE and BOR in the District Court, while challenging the actions of the BPA in the Ninth Circuit.

## CONCLUSION

Through the Federal Columbia River Power System's (FCRPS) dam and reservoir projects (operated by COE and ten by BOR) BPA markets and transmits the hydroelectric power generated, which comprises 50% of the electric energy consumed in the Pacific Northwest. Because of the large geographic area served by the FCRPS marketing activities of BPA, jurisdiction over BPA final actions under the NWPA was placed in the Ninth Circuit to avoid potential for conflicting district court opinions.

The BPA, COE, and BOR each have independent authority related to the FCRPS and coordinate their activities in order to assure efficient production of hydroelectric power. While the COE and BOR have their respon-

sibilities concerning the hydroelectric projects, the broader direct economic effect of the BPA's marketing activities are subject to review by the Ninth Circuit for the purposes of efficiency and uniformity of judicial decision making.

The gravamen of the Plaintiffs' case is the threat to the existence of endangered salmon species (the Snake River Sockeye and Chinook Salmon) posed by the operation of the FCRPS in view of the requirements of the ESA.

It is impossible to review the BPA's actions concerning its duties under the ESA without examining its obligations under the NWPA, the statutes giving BPA the primary responsibility for implementation of the marketing and allocation of hydroelectric power from the FCRPS. Under the Act, protection, mitigation, and enhancement of wildlife and fish, including anadromous fish is a purpose as well as assuring the Northwest with an adequate, efficient, economical, and reliable power supply. (16 U.S.C. § 839(6).)

The BPA actions complained of are embodied in the BPA 1992 Flow Options Environmental Impact Statement and ROD. *See* 57 Fed.Reg. 35796. These documents reflect BPA's actions are comprised of its power marketing determinations and its determinations regarding the protection, mitigation, and enhancement of anadromous fish.

While the Plaintiffs are focused on a discrete issue—the threat to salmon under the ESA—that is part of a decision that was reached after consideration of many elements, they nevertheless are challenging action of the BPA. Under the jurisdictional provision of the Northwest Power Act, that action must be reviewed by the Ninth Circuit.

Accordingly, the motion of BPA is GRANTED. BPA shall lodge an appropriate order consonant herewith.