SOUTHWEST CENTER FOR BIOLOG-
ICAL DIVERSITY, a non-profit
corporation, Plaintiff,

v.

FEDERAL ENERGY REGULATORY
COMMISSION, U.S. Forest Service, and
Fred Trevey, the Coconino National For-
est Supervisor, Defendants,

and

Phelps Dodge Corporation,
Intervenor–Defendant.

No. CIV 96–0843–PCT–SMM.

United States District Court,
D. Arizona.

March 28, 1997.

Grove T. Burnett, David T. Gomez, Western Environmental Law Center, Taos, NM, for Plaintiff.

Kelly E. Mofield, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, Eric Lee Christensen, Federal Energy Regulatory Com'n, Washington, DC, for Defendants.

Jerry L. Haggard, Gerrie Apker Kurtz, Kevin Michael Moran, Apker, Apker, Haggard & Kurtz, Phoenix, AZ, Cynthia Marie Chandley, Phelps Dodge Corp., Phoenix, AZ, for Intervenor.

## MEMORANDUM OF DECISION AND ORDER

McNAMEE, District Judge.

Pending before this Court and considered herein is the Intervenor-defendant's motion to dismiss for lack of standing treated as a motion for summary judgment under Fed. R. Civ. Pro. 56, and the Federal Defendant's motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(1), for lack of subject matter juris-

diction, and 12(b)(6), for failure to state a claim upon which relief may be granted.

## I. BACKGROUND

Plaintiff Southwest Center For Biological Diversity ("SWCBD"), a public interest organization, filed this declaratory and injunctive relief action against Defendants Federal Energy Regulatory Commission ("FERC"), the United States Forest Service ("Forest Service"), and Fred Trevey (collectively "the Federal Defendants") on April 8, 1996. Plaintiff alleges violations of the Endangered Species Act, 16 U.S.C. § 1531 *et seq.* ("ESA"), and its implementing regulations, 50 C.F.R. § 402 *et seq.*

Plaintiff contends that the FERC and the Forest Service have violated the ESA by (1) failing to formally consult the United States Fish and Wildlife Service (USFWS) on the ongoing effects of the Blue Ridge Hydro Project ("the Project") on a particular endangered fish species (Little Colorado River spinedace—hereinafter "spinedace"), and (2) authorizing an unpermitted taking of the spinedace by allowing continued operation of the Project without consultation of the USFWS. *See* Compl. at p. 2. Plaintiff seeks an injunction requiring the FERC and the Forest Service to enter into formal consultations with the USFWS and to modify the Project in such a way as to protect the spinedace pending completion of the consultation.

The Blue Ridge Hydro Project was constructed by Phelps Dodge Corporation in 1963. The Project is currently owned and operated by a wholly-owned subsidiary of Phelps Dodge. *Id.* On July 31, 1996, this Court granted a motion by Phelps Dodge to intervene as a defendant in this action.

The Federal Defendants collectively and Phelps Dodge ("Intervenor-defendant") separately filed motions to dismiss the Complaint. Intervenor-defendant Phelps Dodge's motion to dismiss was argued before this Court. Both motions are considered herein.

## II. STANDING

Phelps–Dodge moved this Court to Dismiss pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure. Plaintiff submitted affidavits in support of its opposition to the motion to dismiss and requested this Court treat the motion instead as a motion for summary judgment under Rule 56. Phelps Dodge expressly consented to Plaintiff's request. Accordingly, the Court will review the Intervenor-defendant's motion to dismiss as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

### A. Standard of Review

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (1995); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Jesinger v. Nevada Federal Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994). Substantive law determines which facts are material. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Jesinger,* 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The dispute must also be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Jesinger,* 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552; *see also Citadel Holding Corp. v. Roven,* 26 F.3d 960, 964 (9th Cir.1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Celotex,* 477 U.S. at 317, 106 S.Ct. at 2549–50. The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] plead-

ings, but must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986); *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir. 1995).

## B. Discussion

The doctrine of standing encompasses both constitutional and statutory considerations. *Salmon River Concerned Citizens v. Robertson,* 32 F.3d 1346, 1353 (9th Cir.1994). To satisfy constitutional requirements for standing, plaintiffs must show: "(1) actual or threatened injury (2) suffered as a result of the allegedly illegal conduct of the defendant, which (3) fairly can be traced to the challenged action and (4) is likely to be redressed by a favorable decision." *Id.* at 1353 (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)) The Supreme Court recently summarized these requirements as follows:

> (1) the plaintiff must have suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical[;] [1]
>
> (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court; [and]
>
> (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (internal quotations and citations omitted). The party invoking federal jurisdiction bears the burden of establishing the above elements. *Id.* Because these elements are an indispensable part of the plaintiff's case, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

In addition, a procedural injury can form the basis for standing. *Douglas County v. Babbitt,* 48 F.3d 1495, 1500, n. 3 (9th Cir. 1995), *cert. denied,* — U.S. —, 116 S.Ct. 698, 133 L.Ed.2d 655, *reh'g denied,* — U.S. —, 116 S.Ct. 1292, 134 L.Ed.2d 236 (1996). A plaintiff alleging a procedural injury must show that plaintiff (1) has been accorded a procedural right, (2) has some threatened concrete interest that is the ultimate basis for standing, and that (3) the interest falls within the "zone of interests" that the challenged statute is designed to protect. *Id.* at 1500 (internal quotations and citations omitted).

Phelps–Dodge argues that Plaintiff's lack standing to bring this action because (1) Plaintiff fails to allege a sufficient injury-in-fact, (2) the injury alleged is procedural without impairment of a separate concrete interest of the Plaintiff, and (3) Plaintiff fails to allege injuries redressable by this Court.

### 1. Procedural Right

■ The Endangered Species Act, 16 U.S.C. §§ 1531 *et seq.,* contains a citizen suit provision. *See* 16 U.S.C. § 1540(g). It provides that "any person may commence a civil suit on his own behalf ... to enjoin any person, including the United States and any other governmental instrumentality or agency ... who is alleged to be in violation of any provision or regulation" of the ESA. *Id.* Plaintiff alleges that Defendants are in violation of § 7 and of § 9 of ESA for their failure to enter into formal consultation with the USFWS on the impact of the Hydro Project on the Spinedace. Accordingly, Plaintiffs have a procedural right to bring this action. *See Lujan v. Defenders of Wildlife,* 504 U.S. at 571–72, 112 S.Ct. at 2142–43 (finding indi-

---

1. The Ninth Circuit cases frequently employ a 'geographical nexus' test that is equatable to the requirement of a concrete interest from *Lujan v. Defenders of Wildlife. Douglas County v. Babbitt,* 48 F.3d 1495, 1501 n. 5 (9th Cir.1995); *see, e.g., City of Davis v. Coleman,* 521 F.2d 661, 671 (9th Cir.1975). The test requires a sufficient geographical nexus exists between the plaintiff and the challenged project such that the plaintiff himself may be expected to suffer whatever environmental consequences the project may cause. *City of Davis,* 521 F.2d at 671.

vidual procedural right to sue under citizen suit of the ESA).

### 2. Threatened Separate Concrete Interest

■ Intervenor-defendant argues that the relaxed standard for procedural standing does not apply because Plaintiff cannot show that any "concrete interest" for which the procedural right protects. In opposition, Plaintiff submits affidavits from two members, Landi Fernley and Liza Hoover, alleging a concrete interest in the continued existence of the Spinedace.

Plaintiff's affidavits contain broad, sweeping, and conclusory statements regarding their alleged concrete interest(s) in the Spinedace. The courts, however, appear to condone articulating a concrete interest in vague, generalized terms. The language of the Fernley affidavit mimics the language of a recent controlling Ninth Circuit decision, *Idaho Farm Bureau Federation v. Babbitt,* 58 F.3d 1392 (9th Cir.1995), and accordingly, appears to establish a sufficient concrete interest for standing.[2]

One of the issues in the *Idaho Farm Bureau Federation* case was whether an intervenor had standing to appeal a district court judgment setting aside the final rule listing the Bruneau Hot Springs Snail as an endangered species. *See id.* at 1398. The court stated that the intervenor must meet the three requirements of Article III standing. *Id.*

The court held that the first requirement of injury–in–fact—that is an invasion of a concrete, particularized, actual and imminent injury *(id.* (citations omitted)—was met by a showing that the intervenor's members live in the state where the species is found; visit the specific area in which the species is found; and maintain a factual and scientific understanding of the Species, its habitat, and threats to the species. *Id.* at 1398–99 (citing *Didrickson v. United States Dep't of the Interior,* 982 F.2d 1332, 1340–41 (9th Cir. 1992) (injury in fact shown that the members were all residents of Alaska, studied, ob-

served, and enjoyed otters in the specific regions of Alaska); *Seattle Audubon Soc'y v. Espy,* 998 F.2d 699, 702–03 (9th Cir.1993) (injury in fact shown by describing frequency with which members visit owl-inhabited forests, their proximity to such forests, and their aesthetic and scientific interest in the owl)).

The Blue Ridge Hydro Project is comprised of a dam, reservoir, intake and pumping station, pipeline, and power plant/generator station. It transfers water from East Clear Creek in the Little Colorado River basin to the East Verde River.

Plaintiff SWCBD is a public interest organization registered in the State of New Mexico. Fernley Affid. at ¶ 2. The organization is comprised of approximately 2,500 members including over 200 that live within a fifty mile radius of the Blue Ridge Dam and Reservoir. *Id.* The mission of the organization is to preserve and protect fish and wildlife and their habitat in order to preserve and protect the biological diversity of the Southwestern United States. *Id.* at ¶ 3.

The organization established a program called the Desert Rivers Program ("Program") exclusively for the purpose of preserving threatened and endangered fish and wildlife in Arizona, including the Little Colorado Spinedace. *Id.* The activities of SWCBD and the Program include a variety of legal measures undertaken to preserve and protect native riparian and aquatic species in Arizona and New Mexico, including the Spinedace. *See Id.*

The activities of the organization and the individual members also include regular scientific, educational, and recreational visits to East Clear Creek in Coconino National Forest. *Id.* at ¶ 5; Hoover Affid. at p. 1. The specific areas of the East Clear Creek visited include upstream and downstream from the Blue Ridge Dam and Reservoir which have been designated as critical habitat for the Spinedace. Fernley Affid. at ¶ 5. The organization has conducted field trips to the specific region for the purpose of educating its members and the general public about the

---

**2.** The Hoover affidavit, on the other hand, alleges potential future economic harm. Ms. Hoover's statements are precisely the type of speculative "some day intentions" rejected by the Supreme

Court in *Lujan. See Lujan,* 504 U.S. at 564, 112 S.Ct. at 2138. Accordingly, Plaintiff cannot meet the showing of a concrete interest through Ms. Hoover's testimony.

1171

riparian and aquatic species, including the Spinedace, their habitat, preservation and protection. *Id.*

Landi Fernley ("Fernley"), a member of SWCBD, derives scientific, educational, recreational, aesthetic, and spiritual benefits and enjoyment from the existence of the Spinedace. *Id.* at ¶ 5. Fernley visited the East Clear Creek both upstream and downstream from the Blue Ridge Dam and Reservoir approximately eight times in the recent year, the most recent visit being in Spring 1996. *Id.* Additionally, Fernley held educational discussions during each of the four educational field trips conducted for the public by the organization. *Id.* at ¶ 6. During each of the visits Fernley enjoyed the recreational, aesthetic and spiritual benefits of the Spinedace in East Clear Creek and continues to visit the area because of their existence. *Id.*

Like the intervenor in *Idaho Farm Bureau Federation,* Plaintiff has shown that its members live in the state where the species is found; visit the specific area in which the species is found; and maintain a factual and scientific understanding of the Species, its habitat, and threats to the species. 58 F.3d at 1398–99. Accordingly, Plaintiff has shown sufficient direct contact with environmental subject matter of this suit to meet the concrete interest requirement for procedural standing. *See Idaho Farm Bureau Federation,* 58 F.3d at 1398. Moreover, the threatened harm to SWCBD's members scientific, educational, aesthetic use and enjoyment of the Spinedace, in absence of a formal consultation with the USFWS is a recognizable injury. *See Idaho Farm Bureau Federation v. Babbitt,* at 1398–99.

Defendants dispute that Plaintiff's members derive aesthetic enjoyment from observing the Spinedace because a professional fisheries biologist was unable to distinguish by sight the Spinedace from other species that exist in East Clear Creek. *See* Phelps Dodge's Reply Memorandum In Support Of Its Motion To Dismiss, Exh. A, Affidavit of Elizabeth Darling ("Darling Affid."), at ¶ 11. Fernley testifies to enjoying the recreational, aesthetic, and spiritual benefits of the Spinedace the East Clear Creek. *See* Fernley Affid. at ¶ 7. Assuming arguendo that Plaintiff's aesthetic interest in the Spinedace is predicated only upon direct observation of

the individual species, then Intervenor-defendant's controverting affidavits create a factual dispute that precludes granting summary judgment in its favor.

### 3. "Zone of Interest"

■ Plaintiff's general mission is to preserve and protect fish and wildlife and their habitat in order to preserve and protect the biological diversity of the Southwestern United States. *See* Fernley Affid. at ¶ 3. Plaintiff's interests, and the interests of its individual members, include the preservation of the Little Colorado Spinedace in East Clear Creek, Coconino National Forest for aesthetic, scientific, spiritual and economic purposes. See Fernley affid. at ¶ 5; Hoover affid. at pp. 1–3. Legitimate interests in preserving species under the ESA clearly fall within the "zone of interests" of the ESA. *Pacific Northwest Generating Cooperative v. Brown,* 38 F.3d 1058, 1065 (9th Cir.1994) (legitimate interest in preserving mink species even for economic purposes is within "zone of interests" of the ESA); *Bennett v. Plenert,* 63 F.3d 915, 919 (9th Cir.1995) (only plaintiffs who allege an interest in the preservation of endangered species fall within the zone of interests protected by the ESA). *Id.* at 919.

### 4. Redressability and Immediacy

■ Defendant argues that Plaintiff must also and cannot show that (1) the harm to Plaintiff's interests is immediate and imminent, and (2) that the remedy Plaintiff seeks is likely to redress its injury. The imminence of Plaintiff's injury from the extirpation or extinction from its critical habitat of one of the exact species to which Plaintiff's preservation interests and activities is devoted is not speculative. *See Idaho Farm Bureau Federation v. Babbitt.* However, the fact is immaterial. It is clear that because Plaintiff has shown a procedural right to protect its concrete interests in the continued existence of the Spinedace, Plaintiff need not "meet all the normal standards for redressability and immediacy." *Lujan,* 504 U.S. at 572–3, n. 7, 112 S.Ct. at 2142, n. 7; *Douglas County,* 48 F.3d at 1501. Defendant's argument therefore lacks merit.

## III. MOTION TO DISMISS

A court should not dismiss a complaint unless convinced beyond a doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Parks Sch. of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). A court may dismiss a pro se complaint without leave to amend only where it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Sands v. Lewis,* 886 F.2d 1166, 1168 (9th Cir.1989).

### A. Lack of Subject Matter Jurisdiction

A party may move for a dismissal of a case based on lack of subject matter jurisdiction at any time. Fed.R.Civ.P. 12(b)(1). Whenever it appears that the court lacks subject matter jurisdiction, it shall dismiss the action. *Id.* 12(h). "[W]here a jurisdictional issue is separable from the merits of the case, the Court may determine jurisdiction by the standards of Rule 12(b)(1) motion to dismiss for lack of jurisdiction." *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir. 1987). Accordingly, the Court may entertain extrinsic evidence, weigh evidence, and where necessary, resolve factual disputes. *See id.*

Subject matter jurisdiction challenges require the plaintiff to bear the burden in showing that jurisdiction is proper. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 376–78, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). When deciding a 12(b)(1) motion for lack of subject matter jurisdiction, a court may properly go outside the pleadings and weigh conflicting facts, with the burden remaining on plaintiff who invoked the federal jurisdiction. *Stock West, Inc. v. Confederated Tribes of the Colville Reservation,* 873 F.2d 1221, 1225 (9th Cir. 1989); *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987) (disputed facts do not prevent a trial court from assessing merits of a jurisdictional claim).

### 1. Federal Energy Regulatory Commission

■ The Federal Defendants move to dismiss Counts I and II against the FERC for lack of subject matter jurisdiction. Counts I and II of Plaintiff's Complaint seek declaratory and injunctive relief against the FERC for alleged violations of Sections 7 and 9 of the ESA, 16 U.S.C. §§ 1536 and 1538, and its implementing regulations, 40 C.F.R. §§ 402 *et seq.* Count I specifically alleges that the FERC violated the ESA by failing to formally consult with the USFWS concerning the effects of the ongoing operations of the Blue Ridge Hydro Project on the spinedace fish. Count II alleges the FERC violated the ESA by unlawfully taking the spinedace through ongoing operations of the Blue Ridge Hydro Project.

Defendants argue first that Plaintiff's allegations against the FERC regarding violations of the ESA fall under the FERC's authority under the Federal Power Act (FPA), 16 U.S.C. § 825*l*(b). Further, jurisdiction over any appeal of the FERC's actions or inactions pursuant to the FPA lies exclusively with the Courts of Appeals. *See* Section 313 of the FPA, 16 U.S.C. § 825*l*. Accordingly, Defendants argue, this Court lacks jurisdiction to hear Plaintiff's Complaint regarding the Federal Defendants failure to comply with the ESA.

Section 313 of the Federal Power Act provides that jurisdiction "to affirm, modify, or set aside in whole or in part" the orders of the [ ] Commission lies exclusively with the United States Courts of Appeal. 16 U.S.C. § 825*l*(b). To seek relief in the Courts of Appeal, a party must be "aggrieved by an order issued by the Commission in a proceeding" under the FPA. *Id.* The party must first, within 30 days of the issuance of the order, have applied to the Commission for a rehearing or reconsideration raising all issues then brought on appeal. 16 U.S.C. § 825*l*(a) & (b).

Plaintiff argues that Section 313 vesting review in the United States Courts of Appeal does not apply for several reasons. First, Plaintiff argues that it does not seek to challenge the FERC's authority to issue or reissue a license under the FPA, but seeks only to enforce FERC's independent affirmative duty under the ESA. Accordingly, this Court

has jurisdiction under the citizen suit provision of the ESA. *See* 16 U.S.C. 1540(g)(1).

The law is clear that any attempt to challenge a license issued by the FERC, however artfully pleaded, will fall under the exclusive jurisdiction of the Federal Courts of Appeal under the FPA. *California Save Our Streams Council, Inc. v. Yeutter,* 887 F.2d 908, 910–11 (9th Cir.1989); *See also, Alabama Power Company v. FERC,* 979 F.2d 1561 (D.C.Cir.1992) (Jurisdictional statute of FPA applied in evaluating Commission's actions under Sections 7(a)(2) or 7(a)(4) of the ESA, 16 U.S.C. §§ 1536(a)(2,4)). Plaintiff urges two reasons why this Court should not construe this action as a challenge to the license falling under the FPA.

First, Plaintiff argues that to determine whether the jurisdictional provision of the FPA applies, the Court should apply a "practical test" adopted by the Ninth Circuit decisions interpreting the jurisdictional requirements of the Pacific Northwest Electric Power and Planning Act ("Northwest Power Act"), 16 U.S.C. § 839; *See Northwest Resource Information Center v. National Marine Fisheries Service,* 25 F.3d 872, 874 (9th Cir.1994) ("*NIRC II*"), *aff'g* 818 F.Supp. 1399 (W.D.Wash.1993) ("*NRIC I*"); *Public Utility District No. 1 of Clark County v. Johnson,* 855 F.2d 647, 650 (9th Cir.1988).

The test requires the Court "focus[ ] on the agency being attacked and whether the factual basis for that attack is an agency action authorized by the (Northwest Power) Act." *NIRC II,* 25 F.3d at 874. Plaintiff argues, applying this test to the FPA, that Plaintiff does not challenge an action authorized by the FPA, but instead challenges the FERC's independent, affirmative duty mandated by the ESA.

The Ninth Circuit's construction of the Northwest Power Act is not controlling in this action. The Northwest Power Act provides, in pertinent part:

Suits to challenge the constitutionality of this chapter, or any action thereunder, final actions and decision taken pursuant to this chapter by the [Bonneville Power] Administrator or the Council, or the implementation of such final actions, ... shall be filed in the United States Court of Appeals for the region ... Suits challenging any other actions under this chapter shall be filed in *the appropriate court.*

Section 9(e) of the Northwest Power Act, 16 U.S.C. § 839*g* (e) (emphasis added). The Ninth Circuit held, based upon on the language permitting other suits in other "appropriate court," that Congress clearly did not contemplate for the Court of Appeals to have exclusive jurisdiction over all actions filed against the Bonneville Power Administrator. *See Public Utility District No. 1 of Clark County v. Johnson,* 855 F.2d 647, 648 (9th cir.1988). However, recognizing the resultant ambiguity as to which actions would properly lie within the jurisdiction of the Circuit Courts, the Ninth Circuit developed the jurisdictional test. *See Northwest Resource Information Center v. National Marine Fisheries Service,* 818 F.Supp. 1399, 1401–02 (W.D.Wash.1993) ("*NRIC I* "), *aff'd* 25 F.3d 872 (9th Cir.1994) ("*NIRC II* "); *Public Utility District No. 1 v. Johnson,* 855 F.2d 647 (9th Cir.1988) (holding jurisdiction provision of Pacific Northwest Electric Power Planning and Conservation Act, 16 U.S.C. § 839(e)(1) did not apply to contract action against the Bonneville Power Administrator). The FPA jurisdictional statute does not contain the ambiguity for which the test was developed. *See* 16 U.S.C. § 825*l*. Nonetheless, applying the test by analogy, supports the conclusion that this Court lacks subject matter jurisdiction over the claims asserted against the FERC.

Section 6 of the FPA provides that licenses issued under the Act can only by altered "upon mutual agreement between the licensee and the Commission." 16 U.S.C. § 799; *Platte River Whooping Crane Critical Habitat Maintenance Trust v. FERC,* 962 F.2d 27, 32 (D.C.Cir.1992) ("*Platte II* "). Accordingly, the FERC's authority to alter the regulation of the Blue Ridge Hydro Project flow exists only if there is a "reopening" provision in the license. *See* 16 U.S.C. § 803(a); *Platte River Whooping Crane Critical Habitat Maintenance Trust v. FERC,* 876 F.2d 109, 113–14 (D.C.Cir.1989) ("*Platte I* "); *United States Dept. of Interior v. FERC,* 952 F.2d at 547–48; *Pacific Gas & Elec. v. FERC,* 720 F.2d 78, 83–84 (D.C.Cir.

1983). Two pertinent provisions of the license contain language that permits the FERC to make modifications to its current operations:

> Article 28. The Licensee shall make water releases into East Clear Creek at the dam during normal no-flow periods that will maintain natural pools of water in the Creek between the dam and Barbershop Creek. The amount and time of water releases shall be determined by the [Federal Energy Regulatory Commission] upon its own motion or upon recommendation of the United States Forest Service.

> \*    \*    \*    \*    \*    \*

> Article 33. The licensee shall construct, maintain and operate such protective devices and shall comply with such reasonable modifications of the project structures and operation in the interest of fish and wildlife resources, provided that such modification shall be reasonably consistent with the primary purpose of the project, as may be prescribed hereafter by the Commission upon its own motion or upon recommendation of the Secretary of the Interior or the Arizona Department of Fish and Game after notice and opportunity for hearing and upon a finding that such modifications are necessary and desirable and consistent with the provisions of the Act [with exceptions].

29 F.P.C. 552, 555–56 (1963).

Plaintiff's are therefore requesting that the Commission undertake an action for which the ultimate authority to perform is provided within the license granted pursuant to the FPA. *See United States Dept. of Interior v. FERC,* 952 F.2d 538, 547 (9th Cir.1992); *See also, Platte I,* 876 F.2d 109, 113–16 (D.C.Cir. 1989). Thus, under the practical test urged by Plaintiff, the jurisdictional statute of the FPA applies, vesting jurisdiction over this action exclusively with the Courts of Appeals.

Plaintiff's second argument against applying Section 313 of the FPA is that the statute on its face is inapplicable. The USFWS listed the spinedace as a threatened species, and designated East Clear Creek as its critical habitat on September 16, 1987. *See* 52 Fed. Reg. 35,034 (Sept. 16, 1987). The Blue Ridge Hydro Project license was issued in 1963. Plaintiff argues accordingly that it is long past the time to object to the licensing order. Moreover, the license has not been modified since 1963, nor has the Commission held any further "proceeding" regarding the license in which any order could have been issued, or in which Plaintiff could have participated as required under the FPA. *See* 16 U.S.C. § 825l.

Although Plaintiff's argument is not entirely without merit, the Court is not persuaded that Plaintiff's distinction lends to the application of the jurisdictional provision of the ESA. The fact that there is not an appealable order by the Commission regarding the license at this stage is due to Plaintiff's choice not to petition the Commission directly for action. Clearly, Plaintiff has avenues by which the opportunity to appeal a denial may be created. *See* 18 C.F.R. § 385.207(a)(5) (providing for the petitioning of any action which is in the discretion of the Commission and for which the Code of Federal Regulations prescribes no other form of pleading); *United States Dept. of Interior v. FERC,* 952 F.2d at 547. The Commission's action or inaction accordingly is then subject to judicial review. *See United States Dept. of Interior v. FERC,* 952 F.2d at 547.[3]

Under the current state of the law, Plaintiff's claims must be construed as a challenge to or request for action by the Commission that falls under the Commission's authority granted under the FPA. *See LaFlamme v. FERC,* 945 F.2d 1124 (9th Cir.1991) (FPA jurisdictional provision applied to consideration of violation of NEPA by Commission's order amending and reinstating license); *Platte I,* 876 F.2d at 113–16; *Platte II,* 962 F.2d at 32. "When two jurisdictional statutes draw different routes of appeal, the well-established rule is to apply only the more specific legislation." *California Save Our Streams Council v. Yeutter,* 887 F.2d 908, 911 (9th Cir.1989) (finding specific jurisdictional provisions of the FPA which expressly govern review of disputes concerning

---

**3.** In view of this discussion, the Court rejects Plaintiff's argument that Defendants' interpretation of Section 313 of the FPA leaves Plaintiff essentially without a remedy.

the licensing of hydroelectric projects control over general and widely applicable procedures that regulate NEPA, AIRFA and other statutory challenges); *See also, Northwest Resource v. National Marine Fisheries,* 25 F.3d 872, 875 (9th Cir.1994) (Explicit jurisdictional requirements of the Northwest Power Act take precedence over general jurisdiction provision of the Endangered Species Act). Accordingly, exclusive jurisdiction of this action as against the FERC lies with the Court of Appeals. It is unnecessary to address the FERC's remaining arguments.

## 2. United States Forest Service

Counts III and IV of Plaintiff's Complaint seek declaratory and injunctive relief against the U.S. Forest Service also for violations of Sections 7 and 9 of the ESA, 16 U.S.C. § 1536, and its implementing regulations, 50 C.F.R. § 402 *et seq.* Count III is based upon the Forest Service's failure to formally consult the USFWS regarding the ongoing operations of the Blue Ridge Hydro Project. Count IV is based upon the unlawful taking of the spinedace through the ongoing operations of the Blue Ridge Hydro Project. The factual allegations within the Complaint supporting Counts III and IV include:

(1) The Forest Service is responsible for the ongoing operations of the Blue Ridge Hydro Project on National Forest System lands in the Coconino National Forest, Compl. p. 6, ¶ 20;

(2) The operation of the Blue Ridge Hydro Project threatens the spinedace population in East Clear Creek. The project splits the population in half, preventing mixing between the upstream and downstream populations. The reservoir alters and reduces the natural water flow from East Clear Creek, adversely affects water temperatures, and is stocked with non-native fish which compete with and prey on the spinedace. Finally, project operations and recreational activities introduce oil and other pollutants into East Clear Creek. Compl., p. 9, ¶ 28.

(3) The Forest Service issued a special use authorization to Phelps–Dodge to conduct repairs on the Blue Ridge Hydro Project, and prepared an Environmental Assess-

ment and Finding of No Significant Impact (FONSI) for the proposed action without considering the effect of the ongoing operation on the spinedace. Compl. ¶¶ 31, 32.

One glaring difficulty in Plaintiff's Complaint is the failure to set apart actions by the Forest Service complained of from actions by the FERC. The plain language of Counts III and IV allege violations against the Forest Service in relation to the affect of the *ongoing operations of the Blue Ridge Hydro Project* on the spinedace. *See* Compl., ¶¶ 39 & [41]. Apparently, the "ongoing operations" of the Blue Ridge Hydro Project include everything from construction of the project, to stocking the reservoir, to approving certain recreational activities. The FERC, not the Forest Service, however, controls most, if not all of the "operations" of the Blue Ridge Project. *See* 16 U.S.C. 16 U.S.C. §§ 797(e), 817; 29 F.P.C. 552 (1963). And, if in challenging the actions of the Forest Service, Plaintiff is essentially attacking the FERC license itself, then this action must be dismissed for lack of subject matter jurisdiction. *See California Save Our Streams,* 887 F.2d 908, 911 (9th Cir.1989).

### a. Operations of the Blue Ridge Hydro Project

It is unnecessary to address each "operation" alluded to in the Complaint. Plaintiff argues in its response to the motion to dismiss that the claims against the Forest Service are based upon the Forest Service's (1) obligation and failure to recommend, pursuant to Article 28 of the license, water flow levels to protect the spinedace, and (2) approval of stocking non-native fish in the Blue Ridge Reservoir pursuant to the Coconino National Forest Land and Resource Management Plan ("LRMP").

Defendants argue that under *California Save Our Streams v. Yeutter* Plaintiff's action must be construed as an action challenging the FERC license. The plaintiff in *California Save Our Streams* appealed the U.S. Forest Services' Finding of No Significant Impact Statement issued after review of a proposed FERC license with several conditions for protection of the land. *Id.* at 910; *See also,* 16 U.S.C. § 797(e); *Escondido Mutual Water Co. v. La Jolla, Rincon, San*

*Pasqual, Pauma, and Pala Bands of Mission Indians,* 466 U.S. 765, 772, 104 S.Ct. 2105, 2110, 80 L.Ed.2d 753 (1984) (FERC required under the FPA to accept reasonable restrictions imposed by Secretary). The plaintiff challenged the conditions first in the administrative proceedings held by the Forest Service, and then in district court. *Id.*

In district court, the plaintiff alleged that the conditions imposed on the license violated the National Environmental Policy Act (NEPA) and the American Indian Religious Freedom Act (AIRA). *Id.* The district court dismissed the action finding that the Federal Courts of Appeals were vested by Congress with exclusive jurisdiction for challenges to a FERC license. *Id.*

The Plaintiff, on appeal argued that the challenge was not to the FERC license, but to the Forest Service's independent obligations under the ESA. Affirming the district court, the Ninth Circuit noted "[g]iven Congress's careful choice of words, there can be little room for argument over whether the [FPA] vests sole jurisdiction over questions arising under the FERC licenses in Courts of Appeals." *Id.* at 911. The court reasoned:

> In effect, appellants argue that they are not attacking the licensing decision made by FERC but instead are seeking review only of the Forest Service's failure to follow the procedural and substantive steps outlined in statutes outside of the purview of the power and energy regulation.

*Id.* The Court rejecting the plaintiff's argument, foreclosed the plaintiff's ability, "through careful pleading, to avoid the strict jurisdictional limits imposed by Congress." *Id.; See also, Alabama Power Company v. FERC,* 979 F.2d 1561 (D.C.Cir.1992) (Jurisdictional statute of FPA applied in evaluating Commission's actions under Sections 7(a)(2) or 7(a)(4) of the ESA, 16 U.S.C. §§ 1536(a)(2,4)).

### 1) Failure to Recommend

■ Plaintiffs allege that the U.S. Forest Service violated Sections 7 and 9 of the ESA by failing to recommend flow levels to protect the spinedace, and failing to formally consult with the U.S. Fish and Wildlife Service regarding the Forest Service's actions.

The Court need only embark a short distance down the path toward determining Defendants 12(b)(6) motion before recognizing that an important ingredient of the FERC license is embedded in the resolution the issues.

Section 4 of the ESA directs the Secretary to list endangered and threatened species and to designate habitat critical to the listed species survival. 16 U.S.C. § 1533(a); *Sierra Club v. Babbitt,* 65 F.3d 1502, 1504 (9th Cir.1995). Once a species has been placed on the list, federal agencies are prohibited from "authorizing, funding, or carrying out any action that is likely to jeopardize the continued existence of a protected species or adversely modify its critical habitat." 16 U.S.C. § 1536(a)(2); *Babbitt,* 65 F.3d at 1504.

To carry out the objectives of the ESA, Section 7 also imposes a duty upon federal agencies to consult with the USFWS before engaging in any discretionary action which may affect a listed species. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(a); *Babbitt,* 65 F.3d at 1504–05. The taking of any species listed by any person, including the federal agencies, without authorization after formal consultation under Section 7, 16 U.S.C. § 1536(a)(2), is unlawful pursuant to Section 9, 16 U.S.C. § 1538(a). *Babbitt,* 65 F.3d at 1505.

While Congress has the authority to regulate all conduct capable of harming protected species, "Congress chose to apply section 7(a)(2) to federal relationships with private entities only when the federal agency acts to authorize, fund or carry out the relevant activity." *Sierra Club v. Babbitt,* 65 F.3d at 1508. To determine "agency action," courts look to the implementing regulations of the ESA. *See Marbled Murrelet,* 83 F.3d at 1073; *Sierra Club v. Babbitt,* 65 F.3d at 1513. The regulations define an agency action as any action in which there is "discretionary Federal involvement or control." 50 C.F.R. § 402.03.

The Ninth Circuit appears to place an stronger emphasis on the weightier requirement of "control" versus the lesser requirement of involvement. Accordingly, advisory activity does not constitute "agency action"

under the ESA. *Marbled Murrelet,* 83 F.3d at 1073. In this action, the Forest Service's authority to act in relation to the ongoing operations of the Blue Hydro Project is provided for by Article 28 of the license:

> The Licensee shall make water releases into East Clear Creek at the dam during normal no-flow periods that will maintain natural pools of water in the Creek between the dam and Barbershop Creek. The amount and time of water releases shall be determined by the [Federal Energy Regulatory Commission] upon its own motion or upon recommendation of the United States Forest Service.

Article 28 therefore permits the Forest Service to make recommendations regarding the water flow that would "inure to the benefit" of the spinedace. Whether the Forest Service's recommendation is purely advisory, however, requires the Court to interpret the provision of the license and determine the FERC's obligation, or lack thereof, to implement any recommendation by the Forest Service. The Court clearly has no jurisdiction to make this determination that is material to evaluating whether Plaintiff states a claim under the ESA. *See California Save Our Streams,* 887 F.2d at 911. Because Plaintiff's claims based upon the Forest Services failure to recommend water flow levels for the benefit of the spinedace implicate the FERC's authority under the license, the Court of Appeals has exclusive jurisdiction under the FPA. Accordingly this Court lacks subject matter jurisdiction.

#### 2) Stocking of Non-native Fish

The other allegations, regarding the stocking of non-native fish in the reservoir, do not appear to have any connection to with the license. However, Defendant's raise an independent basis for this Court's lack of subject matter jurisdiction in relation to this aspect of Plaintiff's Compliant. Defendants argue that Plaintiff's requisite notice of intent to sue pursuant to 16 U.S.C. § 1540(g)(2)(A) was insufficient.

■ No action may be commenced under the citizen suit provision of the ESA prior to Plaintiff giving a 60 day notice of intent to sue under the ESA. *See* 16 U.S.C. § 1540(g)(2)(A). The notice provision is a jurisdictional requirement. *Marbled Murrelet,* 83 F.3d at 1072 (*citing Save the Yaak Comm. v. Block,* 840 F.2d 714, 721 (9th Cir. 1988)). Defendants argue that any claim for a violation of the ESA based upon the Forest Services involvement in stocking the reservoir with non-native fish must also be dismissed for lack of subject matter jurisdiction for failure to give notice. Defendants argue that Plaintiff's letter of intent to sue mentions stocking of non-native fish as effecting the spinedace population, but fails to allege the Forest Services action as a basis for the ESA claim.

Plaintiff's letter of intent to sue, dated December 21, 1995, was addressed and mailed to Mr. Fred Trevey, Coconino National Forest Supervisor, J. Mark Robinson, Director of the Division of Project Compliance and Administration of the FERC, the FERC regional office, and Bruce Babbitt, Secretary of the Interior. The letter informs of Plaintiff's intent to sue for violations of Sections 7 and 9 of the Endangered Species Act. The pertinent paragraph of the letter states:

> The stocking of the reservoir with non-native species such as rainbow trout, and the effects of the impoundment and pumping operations on changing water temperature and reduced water flow in the East Clear Creek drainage has been cited by numerous studies as a threat to the survival of the Little Colorado River Spinedace ... The amount of water released from the reservoir into the East Clear Creek drainage through the Blue Ridge stillway is inadequate for the survival needs of the Little Colorado River Spinedace in East Clear Creek and constitutes a "taking" under section 9 of the ESA. The Forest Service and FERC have never entered into formal section 7 consultation with USFWS over the effects of the ongoing operation of the Blue Ridge Complex to the Little Colorado River Spinedace and its Critical Habitat.

*See* Compl., Exh. A.

■ The purpose of the notice requirement is to provide the defending agency time to comply and avoid the necessity of a citizen suit. *Marbled Murrelet,* 83 F.3d at 1072.

Plaintiff's notice letter lists a number of factors threatening the spinedace that are ongoing within the Blue Ridge Hydro Project, and Plaintiff's intent to sue under both Sections 7 and 9 of the ESA. The Court finds that on whole, the language of the Notice is "sufficiently broad" to encompass the stocking of the reservoir with non-native fish as an element of Plaintiff's complaint under the ESA. *See Id.* at 1074; *cf. Lone Rock Timber Co. v. U.S. Dept., of Interior,* 842 F.Supp. 433, 440 (D.Or.1994). This Court accordingly has subject matter jurisdiction over the action as it relates to the Forest Service's involvement in stocking the reservoir with non-native fish.

**B. Failure to State A Claim**

In deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must presume all factual allegations of the complaint to be true. *Miree v. DeKalb County, Georgia,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *NL Indus. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986). Although the complaint is construed in the light most favorable to the plaintiff, legal conclusions couched as factual allegations, however, are not given a presumption of truthfulness. *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). A court should not dismiss a complaint unless convinced beyond a doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Parks Sch. of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995).

Defendants argue that Plaintiff has failed to state a claim under Section 7 and Section 9 of the ESA upon which relief may be granted against the Forest Service. The allegations remaining against the Forest Service are based upon the Forest Service's involvement in stocking the reservoir with non-native fish. Defendants have failed to cite any legal authority for their position that Plaintiff fails to state a claim for this action by the Forest Service. Accordingly, the Court is without

sufficient information to determine that Plaintiff fails to state a claim against the Forest Service for the stocking of non-native fish in the Blue Ridge Hydro Project. Defendants motion is therefore denied without prejudice.

**IV. CONCLUSION**

Under the Ninth Circuit caselaw interpreting *Lujan v. Defenders of Wildlife,* Plaintiff has standing to bring this action. Counts I and II against the FERC raise allegations of which the Court of Appeals has exclusive jurisdiction under the FPA, 16 U.S.C. § 825*l*. Accordingly, this Court lacks subject matter over this action as against the FERC. Counts III and IV against the Forest Service as they pertain to the Forest Service's failure to make water flow recommendations, likewise raise allegations outside of this Court's subject matter jurisdiction. However, with the respect to the Forest Service's alleged involvement in the stocking of non-native fish in the Blue Ridge Reservoir, the Court is not convinced beyond a doubt that Plaintiff's fails to state a claim under Sections 7 and 9 of the ESA.

For the foregoing reasons,

**IT IS THEREFORE ORDERED** Motion to Dismiss Of Intervenor Phelps Dodge Corporation filed on September 10, 1996 is **DENIED [DOC. # 28]**.

**IT IS FURTHER ORDERED** Federal Defendants' Motion for Leave to File an Overlength Brief filed on June 17, 1996 is GRANTED. [DOC. # 6]

**IT IS FURTHER ORDERED** Federal Defendants' Motion to Dismiss filed on June 17, 1996 is **GRANTED in PART and DENIED in PART**; GRANTED with respect to dismissing Counts I and II against the Federal Energy Regulatory Commission; GRANTED with respect to dismissing Counts III and IV against the U.S. Forest Service as they pertain to the Forest Service's failure to recommend water flow levels of the Blue Ridge Hydro Project; DENIED without prejudice with respect to dismissing Counts III and IV against the United States Forest Service as they pertain to the Forest

Service's stocking of non-native fish in the Blue Ridge Reservoir. [DOC. # 4]

**IT IS FURTHER ORDERED** the Clerk of the Court shall **DISMISS Defendant Federal Energy Regulatory Commission** from this action.