**SOUTHWEST CENTER FOR
BIOLOGICAL DIVERSITY,
Plaintiff,**

v.

**UNITED STATES FOREST SERVICE
and Arizona Cattle Growers'
Association, Defendants.**

**No. Civ.A. 99–0795–PHX.**

United States District Court,
D. Arizona.

Feb. 1, 2000.

James Jay Tutchton, Earthlaw, University of Denver, CO, Brendan Ridgely Cummings, Berkeley, CA, for Southwest Center for Biological Diversity.

Monte C Clausen, United States Attorney, Tucson, AZ, Paul Boudreaux, U.S. Dept of Justice, Environment & Natural Resources Division, Washington, DC, for United States Forest Service, defendant.

Norman D James, Jay Lawrence Shapiro, Fennemore Craig, Phoenix, AZ, for Arizona Cattle Growers' Association, an Arizona nonprofit corporation, intervenor-defendant.

## MEMORANDUM AND ORDER

WILLIAM G. YOUNG, District Judge.[1]

### I. Introduction

In this action, the Southwest Center for Biological Diversity ("Southwest Center") seeks declaratory and injunctive relief due to the alleged failure of the United States Forest Service (the "Forest Service") to comply with certain provisions of the Endangered Species Act (the "Act"), 16 U.S.C. § 1531, et seq. Specifically, Southwest Center seeks a declaratory judgment that the Forest Service has failed to fulfill its obligation to consult with the United States Fish and Wildlife Service (the "Wildlife Service") pursuant to Section 7(a)(2) of the Act prior to the issuance of certain livestock grazing permits within the Tonto National Forest. Southwest Center also seeks an order enjoining the Forest Service from permitting grazing pursuant to the challenged allotments unless and until the Forest Service remedies its alleged violations of the statutory obligations.

By order dated March 1, 1999, Magistrate Judge Carruth granted the motion of

1. Of the District of Massachusetts, sitting by designation.

the Arizona Cattle Growers' Association ("Cattle Growers") to intervene with respect to the relief portion of the action. With regard to the merits of whether the Forest Service violated the Act, Magistrate Judge Carruth limited the Cattle Growers to filing amicus briefs.

Before the Court now are the following motions:

▶ A Request for Reconsideration of Order Granting Intervention filed by Cattle Growers. This. motion seeks a reconsideration of Magistrate Judge Carruth's intervention order. Specifically, Cattle Growers seeks a ruling that it may be considered a full party defendant with respect to the declaratory merits portion of the action, as well as the injunctive relief portion.

▶ A Motion for Leave to File Motion for Summary Judgment Regarding Plaintiff's Standing filed by Cattle Growers. In this motion, Cattle Growers seeks the Court's permission to file a motion for summary judgment.

▶ A Motion for Leave to File a First Amended Answer by the Forest Service. The Forest Service alleges that its original February 26, 1999 answer is no longer accurate. In that answer, the Forest Service admitted that it had not consulted with the Wildlife Service. The Forest Service now claims that on March 31, 1999 it initiated the required consultation process and that its answer should be amended to reflect this factual development.

▶ A Motion for Partial Judgment on the Pleadings filed by Southwest Center based primarily on the admission that the Forest Service now seeks to amend.

For reasons discussed below, Arizona Cattle's reconsideration motion and its motion for leave to file a summary judgment motion is DENIED, the Forest Service's motion to amend is GRANTED, and Southwest Center's partial judgment motion is DENIED.

## II. *Factual Background*

At the time Southwest Center filed this action, the Forest Service granted several grazing allotments (the "Allotments") within the Tonto National Forest for which it had not completed consultation with the Wildlife Service. *See Compl.* ¶¶ 30–54; *Answer* ¶¶ 30–54. The Forest Service admits that a number of endangered species are located in or near the Tonto National Forest and that the Allotments "may affect" these species. *See Compl.* ¶¶ 19–28; *Answer* ¶¶ 19–28. On March 31, 1999, the Forest Service initiated consultation with the Wildlife Service as required by the Act. *See* Mot. Leave File First Am. Answer at 2.

## III. *Discussion*

### A. *The Cattle Growers' Motion for Reconsideration*

Following substantial briefing and argumentation, Magistrate Judge Carruth determined that Cattle Growers should be entitled to intervene as of right under Fed.R.Civ.P. 24(a)(2),[2] but only during the remedial phase of this action. With respect to the determination of whether the Forest Service is in violation of the Act, Magistrate Judge Carruth limited the Cattle Growers' participation to amicus filings. The Cattle Growers now seek reconsideration of this ruling, arguing that its interests in the outcome of this action merit full

---

2. **(a) Intervention of Right.**
"Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the

action may as a practical matter impair or impede the applicant's ability to protect that interest unless the applicant's interest is adequately represented by existing parties."
Fed.R.Civ.P. 24(a)(2).

participation in both phases of the litigation.

In ruling that the Cattle Growers should be limited to the remedial phase of the suit, Magistrate Judge Carruth relied upon two decisions which approved this procedural approach. *See Forest Conservation Council v. United States Forest Service,* 66 F.3d 1489, 1499 (9th Cir.1995); *Forest Guardians v. Bureau of Land Management,* 188 F.R.D. 389, 396 (D.N.M.1999). In *Forest Conservation Council,* the Ninth Circuit held that a potentially affected state and county could intervene in an action to enjoin federal funding of forest management activities on certain lands. Their participation, however, was limited to "the portion of the proceedings addressing the injunctive relief sought by plaintiffs." *Forest Conservation Council,* 66 F.3d at 1499. In so holding, the Ninth Circuit relied on its own precedents that bar intervention when a lawsuit seeks compliance with a law for which only the federal government can be held responsible:

> NEPA does not regulate the conduct of private parties or state or local governments.... NEPA requires the federal government to issue an environmental impact statement before taking any action 'significantly affecting the quality of the human environment.' 42 U.S.C. § 4332(2)(C). Since NEPA requires only action by the government, no private party can comply with NEPA. It is for that reason that in a lawsuit to compel compliance with NEPA, no one but the federal government can be a defendant.

*Sierra Club v. United States Environmental Protection Agency,* 995 F.2d 1478, 1485 (9th Cir.1993). For this reason, in *Forest Conservation Council,* the Ninth Circuit ruled that the interveners could not "claim any interest that relates to the issue of the Forest Service's liability under [the National Environmental Policy Act and the National Forest Management Act]." *Forest Conservation Council,* 66 F.3d at 1499 n. 11. Rather, the interest of parties like the state and county sharpened so sufficiently as to justify intervention only during the remedial stage of the proceedings.

This procedural approach was also followed in *Churchill County v. Babbitt,* 150 F.3d 1072, *amended by* 158 F.3d 491 (9th Cir.1998), wherein city and county governments sought to intervene in a challenge to a water rights acquisition. The Ninth Circuit affirmed the district court's ruling that the governments could only intervene at the remedial phase, stating that "because NEPA requires action only by the government, only the government can be liable under NEPA. A private party cannot 'comply' with NEPA, and, therefore, a private party cannot be a defendant in a NEPA compliance action." *Id.* at 1082.

Finally, in *Forest Guardians,* Judge Vasquez of the District of New Mexico followed *Forest Conservation Council* and *Churchill County* in a case challenging the issuance of grazing permits on federal land under the control of the Bureau of Land Management. *See* 188 F.R.D. at 396. The permit holders sought to intervene in the case, arguing that their interests would be severely impacted if the court issued either declaratory or injunctive relief. The court agreed that they "may have an interest in the outcome of this litigation by virtue of their holding grazing permits, but under NEPA, they have neither a duty to comply with the statute nor an interest in compliance itself." *Id.* at 395. Thus, Judge Vasquez allowed the permit holders to intervene only in the remedial phase of the litigation, while permitting them to submit amicus filings during the liability phase. *See id.* at 395. The court made this ruling because it felt that "the Ninth Circuit, in specifically looking at NEPA intervention where the interveners were aligned with defendants, has consistently refused to allow intervention more complete than at the remedial stage...." *Id.* at 394.

The Cattle Growers argue that these cases are inapposite because they arose under the National Environmental Policy Act, rather than the Endangered Species Act. *See* Mot. Recons. Order Granting In-

tervent. at 2. The Cattle Growers argue that the Act here should be considered distinguishable from the National Environmental Policy Act for two reasons: (1) Southwest Center's claim under Section 7 of the Act has the potential adversely to impact the economic interests of the Cattle Growers' members, and (2) Southwest Center's claim under Section 9 of the Act implicates a provision of the statute that imposes a duty not to "take" protected species on all persons, not just federal government agencies as under the National Environmental Policy Act. *See id.* at 3–5. "For this reason, the limitations on intervention imposed in decisions such as *Forest Conservation Council* and *Forest Guardians* should not be imposed here." *Id.* at 5.

■ This argument is unavailing. First, the claim that Section 7 implicates economic interests to a greater degree than the National Environmental Policy Act is overstated. Under both Acts, federal agencies are required to perform an analysis of the environmental impact of proposed actions. Southwest Center could easily have brought suit under the National Environmental Policy Act challenging the same alleged delinquencies of the Forest Service. Such an action would harm the economic interests of the Cattle Growers in a manner indistinguishable from the instant case. Second, the claim under Section 9 is merely a derivative claim that depends on the alleged Section 7 liability. Southwest Center has alleged that the Forest Service is in violation of Section 9 because it has permitted the harm of protected species without first obtaining the necessary "take" authorization from the Wildlife Service. Admittedly, under Section 9 of the Act, all persons, not just federal agencies, can be subject to liability for "taking" protected species in certain proscribed manners. *See* 16 U.S.C. § 1538(a)(1). Southwest Center, however, has only brought a claim against the Forest Service and it is only that agency's actions that are here subjected to legal challenge.

In addition to following clear Ninth Circuit precedent, Magistrate Judge Carruth's structuring limited intervention makes great practical sense. The heart of this legal battle is whether the Forest Service has performed its duty to consult in connection with the issuance of certain grazing permits. Because only the Forest Service can "comply" with this duty, only the Forest Service can and should be a defendant for the liability phase of the litigation. *See Churchill County,* 150 F.3d at 1082. No entity other than the Forest Service has a stronger incentive or greater informational ability to challenge this claim. *See Forest Guardians,* 188 F.R.D. at 395 (noting that Bureau of Land Management "is in the best position to present a compliance argument").

For the foregoing reasons, the Cattle Growers' motion for reconsideration is DENIED. The Cattle Growers' participation in this litigation is limited to the remedial phase, should that phase ultimately be reached. Prior to that point, per Magistrate Judge Carruth's ruling, the Cattle Growers may submit amicus memoranda in recognition of their expertise and interest in the subject of the dispute.

B. *The Cattle Growers' Motion for Leave to File a Motion for Summary Judgment*

The Cattle Growers also move for leave to file a summary judgment motion attacking the standing of Southwest Center to challenge the actions of the Forest Service. The Forest Service has not raised this argument and expressly declines to take a position on the Cattle Growers' motion. *See* Forest Service's Surreply Mem. Opp'n Mot. for Partial J. on Plead. at 4 n. 2.

The Cattle Growers recognize that they are under an order limiting their direct participation to the remedial phase of this litigation. They argue, however, that Southwest Center has opened the door to such a summary judgment motion because Southwest Center asks for injunctive relief in its motion for partial judgment on the

pleadings. *See* Cattle Growers' Mot. Leave File Mot.Summ.J. at 2. ·

█ Though facially appealing, the Court rejects this argument. Injunctive relief does not follow willy-nilly whenever a plaintiff succeeds in establishing liability. If Southwest Center's motion for partial judgment on the pleadings is successful, the Court will not issue an injunction without first affording both the Forest Service and the Cattle Growers an opportunity to · object. Southwest Center's prayer for relief does not serve as the case management order for this litigation; it is this Court, rather, that determines when the case has entered the remedial phase. At this point, the Court holds that the remedial phase has not been reached. Therefore, the Court DENIES the Cattle Growers' request for leave to file a summary judgment motion.

### C. *Southwest Center's Standing*

That said, this Court must still address the serious issue raised by the Cattle Growers' proffered motion. The Cattle Growers argue that their motion ought be heard because they challenge standing, a prerequisite to this Court's subject matter jurisdiction under Article III of the Constitution. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The Cattle Growers are, of course, correct and therefore the Court will address the matter of whether Southwest Center has standing to press its claims. To be clear, however, the Court addresses subject matter jurisdiction on its own motion, treating the pleadings of Cattle Growers as amicus memoranda rather than as a motion brought by a party as of right. This approach is necessary in order to preserve the force of Magistrate Judge Carruth's limitation

upon the Cattle Growers' participation in the litigation.[3]

A plaintiff must demonstrate three elements constituting the "irreducible constitutional minimum of standing" necessary to satisfy the case or controversy requirement under Article III of the Constitution:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* (quotations and citations omitted). Southwest Center, as the party invoking the subject matter jurisdiction of this Court, has the burden of demonstrating each of these elements.

Additional concerns are raised by the fact that Southwest Center seeks to satisfy the standing requirements by asserting only the interests of its members. "Such 'representational standing' is appropriate where 1) the organization's members would have standing to sue on their own, 2) the interests the organization seeks to protect are germane to its purpose, and 3) neither the claim asserted nor the relief requested requires individual participation by its members." *Salmon River Concerned Citizens v. Robertson,* 32 F.3d 1346, 1352 n. 10 (9th Cir.1994) (citations omitted).

---

**3.** An unintended consequence of this approach may be to prevent for a time the Cattle Growers' right to appeal the standing issue. *See Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 376, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987) ("An intervenor may appeal from 'all interlocutory and final orders *that affect him* ....' ") (quotation omitted)

(emphasis added). While the Court in no way seeks to insulate itself from appeal and indeed regrets the necessity of such a consequence with respect to the Cattle Growers, the Court is nonetheless satisfied that the Forest Service is more than competent to challenge the standing determination should it see fit to do so.

In *Southwest Center for Biological Diversity v. Federal Energy Regulatory Commission*, 967 F.Supp. 1166, 1168 (D.Ariz.1997), Southwest Center alleged that the Federal Energy Regulatory Commission's failure to consult with the Wildlife Service regarding a hydroelectric power project resulted in violations of Section 7 and Section 9 of the Act. Judge McNamee held that Southwest Center had standing to bring suit because the Act provided Southwest Center with a "procedural right" to bring a citizens suit, because affidavits provided by Southwest Center members which "mimic[ ] the language of a recent controlling Ninth Circuit decision, ... and accordingly ... establish a sufficient concrete interest for standing," because "[l]egitimate interests in preserving species under the [Act] clearly fall within the 'zone of interests' of the [Act]," and because the requested relief of an injunction would meet the constitutional requirement of redressability. *See id.* at 1169–71. More specifically, Judge McNamee held that:

> Plaintiff has shown that its members live in the state where the species is found; visit the specific area in which the species is found; and maintain a factual and scientific understanding of the Species, its habitat, and threats to the species.... Moreover, the threatened harm to [Southwest Center's] members' scientific, educational, aesthetic use and enjoyment of the [species], in absence of a formal consultation with the [Wildlife Service] is a recognizable injury.

*Id.* at 1171 (citing *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1398–99 [9th Cir.1995] ). Because Southwest Center has made similar allegations in the instant case with respect to its members' interests in the Tonto National Forest, *see* Compl. ¶¶ 7–9, Judge McNamee's careful analysis of the nature of Southwest Center's activities and membership suggests that standing in this case should likewise withstand summary judgment.

4. *See* Galvin Decl.; Witzeman Decl.

Nevertheless, the Cattle Growers argue that Southwest Center has not sufficiently shown standing in this case because the nature of the challenged Forest Service actions requires a heightened degree of pleading. Each of the twenty-five grazing allotments challenged in this case is, in the Cattle Growers' view, an individual agency action requiring individual analysis: "An abstract violation of a procedural requirement for 25 different grazing allotments, with differing climates, terrain, water bodies, range improvements, management regimes and other unique features and conditions, does not confer Article III standing on [Southwest Center]." Cattle Growers' Mem.Supp.Mot. for Summ.J. at 14. Specifically, the Cattle Growers argue that Southwest Center has not sufficiently shown that (1) listed species are threatened by the Forest Service's actions, and (2) Southwest Center members' interests in the survival of those species is linked to concrete facts about the members' activity in each of the twenty-five individual allotments.

This Court is satisfied that the Forest Service's actions "threaten listed species." *Lujan*, 504 U.S. at 564, 112 S.Ct. 2130. Not only has Southwest Center provided detailed affidavits[4] summarizing the ecological facts which establish that the Forest Service's actions "will likely affect" listed species, 16 U.S.C. § 1536(a), but the Forest Service itself, in both its amended answer to the Complaint and its initiation of formal consultation with the Wildlife Service, has admitted that grazing on these lands is likely to affect listed species. Given this concession by the Forest Service, it is simply too late in the game for the Cattle Growers to question whether the grazing allotments may affect listed species.

Likewise, the Court is satisfied that Southwest Center's members have demonstrated a sufficiently particularized interest in each of the twenty-five allotments. The Cattle Growers note correctly that the

Supreme Court has rejected an "ecosystem nexus" approach that would grant standing to "any person who uses any part of a 'contiguous ecosystem' adversely affected by a funded activity ... even if the activity is located a great distance away." *Lujan,* 504 U.S. at 565, 112 S.Ct. 2130. The Supreme Court emphasized, however, that it was rejecting standing for "persons who use portions of an ecosystem *not perceptibly affected by the unlawful action in question.*" *Id.* at 566, 112 S.Ct. 2130 (emphasis added). Southwest Center argues that listed species in one area of the Tonto National Forest can be "perceptibly affected" by grazing in another area.[5] This is a much different situation from the one addressed by the Supreme Court in *Lujan.* Thus, when the Cattle Growers complain that "neither of [Southwest Center's] declarants state that all of the species are found on all of the allotments," Cattle Growers' Reply Mem. at 4, they have simply misstated Southwest Center's burden. Moreover, even if Southwest Center were required to demonstrate that its members have visited every one of the twenty-five grazing allotments upon which listed species may be found, it has done so in this case. *See* Galvin Decl. ¶ 13; Witzeman Decl. ¶ 4. Thus, Southwest Center has demonstrated, sufficiently to survive summary judgment, the particularized injury to a concrete interest required to maintain standing under Article III.

5. For instance, grazing apparently increases "cowbird parasitism" which can harm a Southwestern willow flycatcher "several miles away from the nearest cow." Galvin Decl. ¶ 19. Similarly, fish such as the Gila topminnow can be affected by grazing upstream from their actual habitat. *See id.* at ¶ 20.

6. The Cattle Growers cite *State of Utah v. Babbitt,* 137 F.3d 1193 (10th Cir.1998) for the proposition that one cannot suffer a procedural injury if one does not have an affirmative right to participate in the underlying procedure that was allegedly not followed. This is a misstatement of the Tenth Circuit's opinion. *State of Utah* involved a claim by the state that it had a right of participation in decisions made by the Secretary of the Interior under the Federal Land Policy and Management

■ Finally, even apart from its demonstrated environmental injuries, Southwest Center and its members have also suffered a procedural injury from the failure of the Forest Service to consult with the Wildlife Service as required by the Act. Such injuries are cognizable injuries-in-fact, *see Lujan,* 504 U.S. at 572–73 & n. 7, 112 S.Ct. 2130, because Southwest Center is "seeking to enforce a procedural requirement the disregard of which could impair a separate concrete interest." *Yesler Terrace Community Council v. Cisneros,* 37 F.3d 442, 446 (9th Cir.1994) (citations omitted). The Cattle Growers correctly note that Southwest Center has no affirmative procedural right to participate in the consultation process. *See* 51 Fed.Reg. 19926, 19928 (1986). At least in the Ninth Circuit,[6] Southwest Center does not need such a formal right in order to demonstrate a procedural injury caused by the Forest Service's failure to consult:

The Intervenor/Appellants argue that by challenging the lack of certification, ONDA has alleged "only a procedural injury," and thus has not demonstrated a concrete injury or the likelihood of redressability. The legal requirement ONDA seeks to impose is one that would affect the reality of the environment. This is a case, therefore, where plaintiffs seek "to enforce a procedural requirement the disregard of which

Act. *See id.* at 1206. The Tenth Circuit first held that the Act did not allow for public participation. It then held that a denial of participation in such a case could not act as a "procedural injury" sufficient to confer standing to challenge the Act's failure to include a right of participation. *See id.* at 1210. In essence, the court denied standing both because the state did not allege a procedural violation and because it did not offer a "concrete interest" separate and apart from the challenged denial of public participation. By contrast, Southwest Center in this litigation has alleged both a procedural violation—one which the Forest Service has now admitted committing—and a separate concrete interest threatened by that violation. Thus, the Cattle Growers' precedent is both misconstrued and inapposite.

could impair a separate concrete interest of theirs." *Lujan*, 504 U.S. at 572, 112 S.Ct. 2130. We have held threatened harm to "health, recreational use, and enjoyment" from the use of herbicides constitutes an impairment of a concrete interest. *Salmon River Concerned Citizens v. Robertson*, 32 F.3d 1346, 1355 (9th Cir.1994). Certainly, ONDA has demonstrated a concrete interest where its members reside and engage in recreational activities along polluted waterways.

*Oregon Natural Desert Ass'n v. Dombeck*, 172 F.3d 1092, 1094 (9th Cir.1998); *see also Oregon Natural Resources Council Action v. United States Forest Service*, 59 F.Supp.2d 1085, 1089 (W.D.Wash.1999) (holding that environmental group demonstrated procedural injury by showing that "[t]he interests of [its] members are threatened by the prospect that logging will go forward without legally required measures being taken to protect native species").

For the foregoing reasons, the Court concludes that, at this stage of the proceedings, Southwest Center has sufficiently demonstrated its standing to bring suit.

### D. *The Forest Service's Motion to Amend Answer*

The Forest Service has sought leave to amend its answer to the complaint. In its original answer, the Forest Service admitted that it had not consulted with the Wildlife Service as required by the Act when issuing the challenged grazing permits. *See* Answer ¶¶ 30–54. In the proposed amended answer, the Forest Service denies those allegations in recognition of the fact that on March 31, 1999, it initiated consultation with the Wildlife Service. *See* Mot. Leave File First Am. Answer at 2. Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend a pleading "shall be freely given when justice so requires." Because the Forest Service's consultation with the Wildlife Service is the central factual premise of this case and because Southwest Center has not opposed the Forest Service's motion,

the Court GRANTS the motion for leave to file a first amended answer.

### E. *Southwest Center's Motion for Partial Judgment on the Pleadings*

With respect to Southwest Center's motion for partial judgment on the pleadings, Southwest Center and the Forest Service agree on far more than they realize. In light of the Forest Service's amended answer, both parties recognize that the Forest Service is no longer in violation of Section 7(a)(2) of the Act. Rather, the dispute now centers on Section 7(d) of the Act, which states:

> After initiation of consultation required under [Section 7(a)(2)], the Federal agency and the permit or license applicant shall not make any irreversible or irretrievable commitment of resources with respect to the agency action which has the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate [Section 7(a)(2)].

16 U.S.C. § 1536(d). The Forest Service has indicated that it has begun an internal review to determine whether its actions in the Tonto National Forest are in compliance with Section 7(d). Southwest Center believes that this assurance is self-serving and that, in light of the somewhat suspicious fact that the Forest Service only initiated consultation after this suit was filed, the Court should enjoin further grazing until it is established *by this Court* that the Forest Service is in compliance with Section 7(d).

The parties' disagreements essentially boil down to two issues: (1) whether Southwest Center is entitled to a declaratory judgment that the Forest Service was in violation of Section 7(a)(2) prior to its initiation of consultation; and (2) whether the Court should issue an injunction prohibiting grazing activities until either the Court or the Wildlife Service independently determines that the Forest Service is in compliance with Section 7(d).

### 1. Whether Southwest Center's Section 7(a)(2) Claim is Moot

The Forest Service argues that Southwest Center's Section 7(a)(2) claim is moot since the agency began consultation with the Wildlife Service on March 31, 1999. Southwest Center believes that this argument is unacceptably cynical. Apparently, the Forest Service's own internal reports, issued well before March 31, recommended that consultation be initiated. *See* Southwest Center's Reply Mem. in Supp. of J. on Plead. at 6–7. Nevertheless, it was only after the filing of this lawsuit, indeed one day before the Forest Service's opposition to Southwest Center's motion was due, that the Forest Service initiated consultation. Given these facts, Southwest Center argues that it should still be entitled to a declaratory judgment that the Forest Service violated section 7(a)(2). Such an approach was taken in *Pacific Rivers Council v. Thomas*, 873 F.Supp. 365, 370 (D.Idaho 1995), wherein the district judge denied the government's motion to dismiss a Section 7(a)(2) claim as moot in light of the fact that the agency only initiated consultation after being ordered to by the Ninth Circuit in a related case.

The *Pacific Rivers Council* case, however, is somewhat of an outlier. The Ninth Circuit has held on many occasions that courts should not examine claims that become moot because of changed factual circumstances during the litigation. *See Humboldt County v. United States*, 684 F.2d 1276, 1283–84 (9th Cir.1982) (challenge to road closure decision moot when status of land changed); *Brady v. Smith*, 656 F.2d 466, 468 (9th Cir.1981) (inmate's claim for injunctive relief based on prison conditions moot when prisoner transferred to different facility); *Friends of the Earth, Inc. v. Bergland*, 576 F.2d 1377, 1378–79 (9th Cir.1978) (challenge to mining plan dismissed as moot when activity sought to be enjoined already completed). The Tenth Circuit has followed this rule in an environmental case virtually identical to the present action. *See Southern Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727–28 (10th Cir.1997) (lack of consultation claims for declaratory and injunctive relief moot when agency consulted with Wildlife Service after filing of suit).

The Forest Service is correct to point out that "[i]t would be academic for the Court to consider [Southwest Center's] demand for a declaratory judgment that the Forest Service was in violation of section 7(a)(2) of the [Act] *when the Complaint was filed*, but not now," or for "the Court to 'order' the Forest Service to engage in consultation, as [Southwest Center's] Complaint requests, when it has already done so." Forest Service Surreply Mem.Opp.Mot. Partial J. on Plead. at 6. For this reason, the Court declines Southwest Center's request to follow the case of *Pacific Rivers*. Instead, the Court follows the settled rule against issuing advisory opinions.

### 2. Whether the Forest Service Must Obtain Concurrence by the Court or the Wildlife Service in its Section 7(d) Judgment Before Acting

Southwest Center argues that the Court should not accept the unilateral statement of the Forest Service that it is undertaking an internal review to determine whether it is in compliance with Section 7(d). Instead, Southwest Center urges this Court to issue an injunction barring the Forest Service from permitting grazing until either the Wildlife Service or this Court determines that the actions of the Forest Service would not have "the effect of foreclosing the formulation or implementation of any reasonable and prudent alternative measures which would not violate [Section 7(a)(2) ]." 16 U.S.C. § 1536(d). Such an approach was taken in *Pacific Rivers Council v. Thomas*, 936 F.Supp. 738, 748 (D.Idaho 1996):

> [T]he court frames the precise issue presented here as follows: Can the Forest Service, after consultation on the Elk Creek allotment has been initiated with [an agency equivalent to the Wildlife Service] under § 7(a)(2) but before its completion, proceed to turn out livestock

on two of the three pastures without [a] biological opinion or concurrence, if the Forest Service makes a unilateral determination that the action is not likely to adversely affect a listed species? After a thorough review of the requirements of the [Act] and the relevant case law, this court must answer this question in the negative.

■ Again, however, this decision is an outlier. Neither the statute nor any other court decision agrees or even suggests that federal agencies must obtain the concurrence of the Wildlife Service prior to relying on Section 7(d). For this reason, Southwest Center's motion for partial judgment is DENIED.[7]

### IV. *Conclusion*

Because Magistrate Judge Carruth properly applied Ninth Circuit precedent in the decision to limit the Cattle Growers' intervention to the remedial phase of the litigation, the Cattle Growers' motion for reconsideration is DENIED [Docket # 10].

Because the Forest Service is well-equipped to defend its own interests in the liability phase of the litigation, the Cattle Growers' motion for leave to file a summary judgment motion is DENIED [Docket # 19].

Because the proposed amended answer of the Forest Service concerns a matter of factual importance, its motion for leave to file an amended answer is GRANTED [Docket # 20].

Because Southwest Center's claim of violation of Section 7(a)(2) has been rendered moot by the Forest Service's initiation of consultation with the Wildlife Service, Southwest Center's Motion for Partial Judgment on the Pleadings is DENIED [Docket # 13].

**7.** Nevertheless, Southwest Center makes a good practical argument that the Forest Service has turned "the law on its head" by undertaking a Section 7(d) analysis *after* it has already permitted grazing. The point of Section 7(d) is to avoid the irreversible com-

Finally, because, as a practical matter, no issues remain "live" in this case during the Forest Service's attempt to comply with Section 7(a)(2), the case shall be ADMINISTRATIVELY CLOSED during such time as the Forest Service is consulting with the Wildlife Service. It may be reopened upon the motion of either Southwest Center or the Forest Service if such party believes that administrative closure is no longer appropriate.

SO ORDERED.

mitment of resources to a government activity before the biological impact of that activity has been assessed by the Wildlife Service. Arguably, the Forest Service's unilateral hindsight analysis fails to live up to the spirit, if not the letter, of Section 7(d).